# JAMES TURNER *v.* AMERICAN CAR RENTAL, INC.
## (AC 25706)

Dranginis, Gruendel and Peters, Js.

Argued September 12—officially released October 25, 2005

*Bernadette M. Keyes*, for the appellant-appellee (plaintiff).

*Max F. Brunswick*, for the appellee-appellant (defendant).

*Opinion*

DRANGINIS, J. The plaintiff, James Turner, appeals, and the defendant, American Car Rental, Inc., doing business as Acme Rent-A-Car, cross appeals from the judgment of the trial court, rendered after a jury trial. The jury found in favor of the defendant with respect to the plaintiff's claim of invasion of privacy, but in favor of the plaintiff on his claim of a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. On appeal, the plaintiff claims that (1) the jury's verdict with respect to invasion of privacy was contrary to the law and the evidence, and (2) the court improperly charged the jury. On cross appeal, the defendant claims that the court improperly (1) failed to admit certain evidence and (2) awarded attorney's fees. We affirm the judgment of the trial court.

The plaintiff commenced this action against the defendant in 2001 in a two count complaint. The plaintiff alleged in the first count that the defendant was licensed to do business in the state of Connecticut. On October 30, 2000, the plaintiff leased a motor vehicle from the defendant at its place of business on Whalley Avenue in New Haven. The plaintiff paid for the use of the vehicle with his bank debit card. The plaintiff drove the leased vehicle from New Haven to Virginia. During the course of his travel, the defendant tracked the plaintiff by means of a global positioning system that was

installed in the vehicle. A global positioning system permits the vehicle's location and speed to be tracked by satellite. See, e.g., *American Car Rental, Inc.* v. *Commissioner of Consumer Protection,* 273 Conn. 296, 299, 869 A.2d 1198 (2005). The plaintiff alleged that he was unaware that the vehicle was equipped with the device because at the time he leased the vehicle, the defendant's agent failed to disclose the terms and conditions of the lease and the purpose of the global positioning system. By means of the global positioning system, the defendant observed that the plaintiff exceeded the posted speed limit on three occasions. The defendant deducted $450 from the plaintiff's bank account without prior notice, authorization or permission. The plaintiff alleged that the defendant intentionally tracked the vehicle and that the surveillance interfered with his solitude, seclusion and private affairs. He also alleged that the defendant knew or should have known that the use of the global positioning system would be offensive to persons of ordinary sensibilities and that its use constituted an intrusion on his privacy.

In the second count of his complaint, the plaintiff realleged the allegations of the first count and further alleged that the defendant did not permit him to refute the allegations of driving in excess of the posted speed limit. The plaintiff also alleged in the second count that the defendant's practices constituted a CUTPA violation. The defendant admitted that the global positioning system was in the vehicle, that it tracked the vehicle and that the defendant took $450 from the plaintiff's bank account, but denied any wrongdoing.

At trial, the jury reasonably could have found, among other things, that the rental agreement contained the following language at the top of its first page, above the heading: "Vehicles driven in excess of posted speed limit will be charged $150 fee per occurrence. All our vehicles are GPS equipped." The defendant, however,

failed to inform the plaintiff that each time the vehicle traveled at a speed in excess of the speed limit, $150 would be withdrawn from the plaintiff's bank account.[1] The defendant nonetheless withdrew $450 from the plaintiff's bank account, but did not notify the plaintiff of the withdrawals. The plaintiff learned of the withdrawals when he attempted to use his bank debit card and was informed that he was overdrawn for the day. The defendant's agent informed the plaintiff that the global positioning system indicated that he had operated the vehicle in excess of the speed limit three times, once each in Connecticut, New Jersey and Virginia.

The jury concluded that the defendant had not invaded the plaintiff's privacy, but that it had engaged in an unfair or deceptive act or trade practice and that the defendant's acts were intentional or with reckless disregard of the plaintiff's rights. The court awarded the plaintiff, inter alia, $6000 in attorney's fees pursuant to the jury's CUTPA verdict. The plaintiff appealed and the defendant cross appealed from the court's judgment.

I

APPEAL

On appeal, the plaintiff claims that the jury's verdict was contrary to law and evidence, and that the court's instruction to the jury on the issue of privacy was improper. In his brief, the plaintiff intermingles his claims, arguing that the jury's verdict as to invasion of privacy is contrary to the law and evidence because the court improperly charged the jury. We disagree.

We have reviewed the court's instruction to the jury in its entirety. On the basis of our review, we conclude that the court clearly articulated to the jury the allega-

---

[1] The plaintiff was not arrested for speeding during the time he operated the vehicle.

tions of the complaint alleging invasion of privacy and the defendant's answer to the complaint. The court informed the jury that the defendant admitted, among other things, leasing the vehicle to the plaintiff, using the global positioning system within the vehicle and charging the plaintiff for three speeding violations. The defendant denied that the plaintiff was unaware of the global positioning system in the vehicle or that its agent failed to disclose the terms of the rental agreement, including the use and purpose of the global positioning system. The defendant denied that the surveillance was done intentionally, that it interfered with the plaintiff's solitude, seclusion in his private affairs or that using the global positioning system would offend a person of ordinary sensibility. The defendant denied that the global positioning system constituted an intrusion of the plaintiff's privacy.

The court then stated to the jury: "So, those are the disputed issues. And, basically, it really comes down to the leasing agreement and what was clearly indicated in the agreement at the time that the contract was entered into between the parties." The court then provided the jury with a proper definition of invasion of privacy.[2] The court then explained the law of contracts to the jury and informed it that the rental agreement constituted the bargain between the parties and that it would have the rental agreement during deliberations. The court explained the duties and obligations of parties to an agreement. The court concluded: "So, basically, when you come down to the question of whether [the plaintiff's] privacy was invaded, the question is as alleged in the complaint . . . . Can you conclude from the evidence that the defendant interfered in some way with [the plaintiff's] solitude, seclusion or his private affairs or whatever occurred? Was that brought to the

---

[2] See *Goodrich* v. *Waterbury Republican-American, Inc.*, 188 Conn. 107, 127–28, 448 A.2d 1317 (1982).

attention of any other person who would have treated that as, in other words, adverse to the plaintiff himself, or who would have felt that they had a right to invade his privacy?

"You have to view the evidence in this case as to what actually occurred. [The plaintiff] operated the vehicle under a leasing agreement where, when you read the leasing agreement, it specifically says it has this device, and that whatever was done by the defendant related to any alleged acts of speeding, and so therefore . . . the question is, do you consider that as an interference with [the plaintiff's] privacy or interference with his solitude, seclusion or private affairs? Now, these are the questions of fact that you are left with in light of what the claims are that are being made by the plaintiff in this case."

"Our standard of review concerning claims of instructional error is well settled. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . The instruction must be adapted to the issues and may not mislead the jury but should reasonably guide it in reaching a verdict. . . . We must review the charge as a whole to determine whether it was correct in law and *sufficiently guided the jury on the issues presented at trial.* . . .

"Our standard of review on this claim is whether it is reasonably probable that the jury was misled. . . . The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly represents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . .

Therefore, jury instructions need not be exhaustive, perfect, or technically accurate. Nonetheless, the trial court must correctly *adapt the law to the case in question* and must provide the jury with sufficient guidance in reaching a correct verdict." (Emphasis added; internal quotation marks omitted.) *State* v. *Solek*, 66 Conn. App. 72, 87–88, 783 A.2d 1123, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001).

"A plaintiff is entitled to an instruction on any theory properly raised in his or her complaint and reasonably supported by the evidence." *Sevigny* v. *Dibble Hollow Condominium Assn., Inc.*, 76 Conn. App. 306, 328, 819 A.2d 844 (2003). "The court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding. . . . The court should, however, submit to the jury all issues as outlined by the pleadings and as reasonably supported by the evidence." (Citations omitted; internal quotation marks omitted.) *Goodmaster* v. *Houser*, 225 Conn. 637, 648, 625 A.2d 1366 (1993).

Here, the plaintiff alleged an invasion of his privacy because the vehicle he rented from the defendant was equipped with a global positioning system and because he was misled as to its intended use. As to his first claim, the plaintiff has not presented us with any authority that equipping a motor vehicle with a global positioning system violates the privacy of the vehicle's operator.[3] The plaintiff also alleged that the defendant tracked his travel on the highway and noted his speed in excess of the posted limit. The plaintiff alleged that the surveillance interfered with his solitude, seclusion and private affairs. The plaintiff has failed to provide us with any

---

[3] In his reply brief in support of his claim of a right to privacy, the plaintiff has relied on several cases from the United States Supreme Court, all of which concern state action. These cases do not apply to a contract between private parties.

legal authority that the operator of a motor vehicle has an expectation of privacy on a public highway.

As to his second argument regarding instructional error, the plaintiff alleged that he leased a motor vehicle from the defendant. He placed the written rental agreement into evidence. At the top of the page above the heading of the agreement are the words, "All our vehicles are GPS equipped." The court explained the law of contracts and the obligations of a party to an agreement.[4] As the court properly instructed the jury, it was a factual determination for the jury to make as to whether the global positioning system in the vehicle and the tracking of the plaintiff's operation of that vehicle constituted an invasion of privacy. We therefore conclude that the court's instruction was not improper, and that the jury was not possibly misled, nor is the verdict contrary to the law and the evidence.

## II

## CROSS APPEAL

In its cross appeal, the defendant claims that the court improperly refused to admit certain evidence and abused its discretion by awarding the plaintiff attorney's fees on his CUTPA claim. We decline to review the claims on cross appeal as they are inadequately briefed.

"[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." (Internal quotation marks omitted.) *Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259 (2004). "Where the

---

[4] On appeal, the plaintiff argues that he was not bound to adhere to the obligations and duties of the rental agreement because it was a contract of adhesion. This claim does not appear to a have been made at trial and, if it was, there is no adequate record of it for our review.

parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Knapp* v. *Knapp*, 270 Conn. 815, 823 n.8, 856 A.2d 358 (2004).

The judgment is affirmed.

In this opinion the other judges concurred.