## STATE OF CONNECTICUT *v.* JOHN G.[1]
## (AC 25504)

Flynn, Bishop and McDonald, Js.*

Argued October 19, 2005—officially released April 10, 2007

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victims or others through whom the victims' identity may be ascertained. See General Statutes § 54-86e.

* The listing of judges reflects their status on this court as of the date of oral argument.

*Kenneth A. Leary,* for the appellant (defendant).

*Ronald G. Weller,* senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,* state's attorney, and *Kevin J. Murphy,* assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, John G., appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), five counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A) and (C) and three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). The defendant claims that the trial court improperly (1) admitted into evidence a recorded telephone conversation between him and his son, and (2) permitted the state to introduce evidence of certain prior, uncharged misconduct.[2] We disagree and affirm the judgment of the trial court.

---

[2] The defendant pursues several avenues in his appeal that we decline to review because they are briefed inadequately.

First, the defendant attempts to assert a violation of his rights under the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut. We decline to review these claims because they were not briefed. Indeed, except for their cursory reference in the defendant's statement of issues, these claims receive no attention in his brief and, thus, are deemed to be abandoned.

Next, the defendant claims that the court improperly limited the testimony of his expert witness. The defendant has neither cited any decisional law to support his proposition, nor has he supplied analysis to support his claim.

"[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than

The jury reasonably could have found the following facts. On September 12, 2002, while en route to Leesburg, Florida, the defendant stopped to visit the home of his son, D, in New Britain. When the defendant arrived, D; D's wife, G; two of the defendant's granddaughters, C and H; and his grandson, N, were present. Another of the defendant's granddaughters, K, was at school. During the defendant's visit, he played with his grandchildren and spent some time using a computer with H, who was four years old, and N, who was five years old. While N was using the computer, H sat on the defendant's lap. The defendant also watched television with C, who was twenty-two months old, placing her on his lap. Sometime after the defendant arrived, D left the residence.

Later in the day, the defendant decided to take a nap, and H brought him a blanket. When H returned, she whispered to her mother that the defendant had "kissed her . . . on the lips" and "touched her on her peeper." When G confronted the defendant, he denied initiating the kiss but admitted to accidentally touching H's private part. He explained that his hand accidentally

mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." (Internal quotation marks omitted.) *Turner* v. *American Car Rental, Inc.*, 92 Conn. App. 123, 130, 884 A.2d 7 (2005). "[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 634–35, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005). Because the defendant has failed to provide analysis in pursuit of his claims, we decline to afford them review.

slipped down and touched H's private part while she sat on his lap. G recounted that after she told the defendant that his behavior was unacceptable, he was very "humble and apologetic." The defendant then left the residence and returned to his home in Florida.

When D arrived home from work, G told him about the incident, and he telephoned the defendant. D recalled that when he spoke to the defendant, the defendant was very apologetic. D then asked the defendant if he had ever touched the older daughter, K, in a similar manner. When the defendant replied, "yes," D hung up the telephone. After the conversation, D decided to watch a videotape from the security camera installed in his home to observe the defendant's interaction with H. After his second time viewing the videotape, D noticed the defendant putting his hands down C's diaper. On the videotape, D noticed that when the defendant's hands were in C's diaper, she struggled, moved his hand, screamed and seemed to be in pain. D testified that there was "no doubt in [his] mind" that C "was sexually penetrated" at that moment.

One month later, after having viewed the videotape and after discussing his concerns with family and friends, D took the videotape to the police. On October 28, 2002, with D's consent, Detective Tracy Baden of the New Britain police department set up a recorded telephone conversation with the defendant and D. During the conversation, the defendant admitted to having touched K, H and C, although he denied digital penetration of their private parts. He admitted to touching K when she was between the ages of four and six but claimed there had been no penetration. As to H, he stated that when he was touching H, his "hands were all over her, [and] it didn't seem to matter where, as long as [he] was touching her." The defendant also admitted to touching his other grandchildren in similar ways, as early as 1989. He recounted that he did not

put his hand down the pants of one of his granddaughters, but he "touched her stomach" and "chest area . . . ." He also stated that he never touched his own children in the way that he touched his grandchildren but was tempted to touch some of the other children in his family.

On December 1, 2002, the defendant was charged with sexually assaulting his three granddaughters, C, H and K.[3] At trial, members of the defendant's family testified that they had witnessed the defendant inappropriately touching several grandchildren and had warned him that his behavior was unacceptable. The defendant's granddaughter, K, and another granddaughter, B, who is a cousin of the victims, testified that the defendant had touched them when they were younger. K testified that she did not remember the defendant touching her in her private area. B testified, however, that she recalled that when she was eight years old, the defendant digitally penetrated her private part when she was sitting on his lap watching television. At trial, the defendant also admitted that he had touched his grandchildren but insisted that it was just a show of affection, that the touching was innocent and that he had never intentionally touched the children in their groin area.[4] Following his conviction and sentencing, the defendant filed this appeal. On appeal, the defendant claims that the court improperly (1) admitted into evidence a recorded telephone conversation between him and D and (2) permitted the state to introduce evidence of certain prior, uncharged misconduct.

I

The defendant first claims that the court improperly denied his motion to suppress a recorded telephone

[3] The defendant was charged with nine counts related to his sexual assault of C and H on September 12, 2002, and his sexual assault of K between October, 1994, and October, 1996.

[4] Additional facts will be referred to where they are pertinent to a discussion of a specific claim of error.

conversation between him and D. Specifically, the defendant claims that the telephone conversation was inadmissible because it constituted an illegal search under the fourth amendment to the United States constitution.[5] We disagree.

As a preliminary matter, we set forth the standard of review. Because the claims raised by the defendant are claims of law, our review is plenary. See, e.g., *State v. Gibson*, 270 Conn. 55, 66, 850 A.2d 1040 (2004). To inform our discussion of the defendant's specific claim, we begin by enumerating some fundamental tenets of federal fourth amendment jurisprudence. "Although the fourth amendment to the United States constitution protects conversations from illegal seizure . . . the United States Supreme Court has explicitly held that this protection does not extend to wiretaps conducted with the consent of one of the parties to the conversation. Neither the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents with the consent of one of the conversants. . . . If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks. . . . Consistent with this constitutional analysis, consensual recording is specifically excluded from wiretaps protected by federal law." (Citations omitted; internal quotation marks omitted.) *State v. Grullon*, 212 Conn. 195, 207–208, 562 A.2d 481 (1989).

---

[5] The defendant makes no claim that the state violated Connecticut's wiretapping statutes, General Statutes § 54-41a et seq.

In the present case, the defendant concedes that his son, D, a party to the conversation, consented to the recording of the conversation. The recording, therefore, did not constitute an unreasonable search for purposes of the fourth amendment, and the court properly denied the defendant's motion to suppress.[6]

## II

Next, the defendant claims that the court improperly permitted the state to introduce evidence of certain prior, uncharged misconduct. Specifically, the defendant claims that the state improperly permitted B to testify because the probative value of her testimony outweighed its prejudicial effect.

The following additional facts are relevant to our disposition of the defendant's claim. The defendant filed a motion in limine, seeking to preclude B's testimony. The court declined to address the issue until it was raised at trial. During the trial, outside of the presence of the jury, the state indicated its intent to call B as a witness to establish a common scheme and plan, intent and absence of mistake.

During the parties' voir dire, outside the presence of the jury, B testified that when she was between the ages of three and eight, the defendant touched her private part while she was sitting on his lap watching television. She also testified that the touching occurred frequently while she was sitting on the defendant's lap when she was between the ages of three and eight.

The defendant objected to the admission of B's testimony on the grounds that the incident, having occurred ten years prior to trial, or eight years before the incident in question, was remote, and, therefore, it was not probative of the issue of common scheme and plan. The

---

[6] We note that although the court denied the defendant's motion to suppress on the basis of *State* v. *Tomasko*, 238 Conn. 253, 681 A.2d 922 (1996), we affirm the court's ruling on the fourth amendment grounds raised by the defendant on appeal.

court denied the defendant's motion in limine. When the jury was recalled, but before B testified in its presence, the court gave the jury a limiting instruction.[7]

When B took the witness stand, she again testified that the defendant had touched her "in her vagina area" while she sat on his lap watching television in his basement. She testified that she was approximately eight years old at the time of the alleged incident. When asked by the state to "describe exactly . . . what [the defendant] was doing," B responded that the defendant digitally penetrated her private part. B also testified that the defendant touched her when she was between the ages of three and eight, although she could not recall the details of the previous incidents. On cross-examination, the court gave the defendant "some latitude" to impeach B's testimony.[8] After B's testimony

---

[7] The instruction was as follows: "All right. Ladies and gentlemen, you are about to hear testimony from this witness, who is identified as B. She is the defendant's granddaughter. And she will testify about certain sexual acts committed on her by the defendant.

"This offer, this evidence is offered by the state, of prior acts of misconduct of the defendant. And it will be admitted to prove not the defendant's bad character or his tendency to commit criminal acts. It is being admitted for a limited purpose for certain issues in this case. And those issues are the commission on the part of the defendant of a common scheme or plan, to show intent, which is a necessary element of these [offenses], and to show an absence of mistake. Those are the issues for which it is being offered.

"It cannot be used by you to show or determine that the defendant has a propensity to commit a crime or to do those acts that are alleged in the information because, simply because he committed these crimes—all right, I'm sorry—that he committed these acts.

"So, the admission of this testimony is for that limited purpose. The defendant is not charged with committing criminal acts upon this witness. All right. She is testifying here to prior acts of misconduct of the defendant to show those limited issues to which I have just referred.

"Let me just take a moment here. Again, I emphasize that you are not to take this evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate a criminal propensity. All right."

[8] Specifically, the court allowed the defendant to question B about her marijuana use in the previous twenty-four hour period, an allegation of sexual abuse made against another individual when she was seven, previous

and in its final instruction to the jury, the court reminded the jury of the limited purpose for which B's testimony was admitted.

We begin our review of the trial court's action by noting that "[a]s a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . Nor can such evidence be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . Evidence of prior misconduct may be admitted, however, when the evidence is offered for a purpose other than to prove the defendant's bad character or criminal tendencies. . . . Exceptions to the general rule precluding the use of prior misconduct evidence have been recognized in cases in which the evidence is offered to prove, among other things, intent, identity, motive, malice or a common plan or scheme. . . .

"In order to determine whether such evidence is admissible, we use a two part test. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of [the prior misconduct] evidence must outweigh [its] prejudicial effect . . . . Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only whe[n] abuse of discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling. . . . The first prong of the test requires the trial court to determine if an exception applies to the evidence sought to be admitted." (Citations omitted; internal quotation

allegations she made that the defendant had sexually abused her and her sister, inconsistencies in testimony that she had given in 1994 and 1996 and her testimony at trial, her lack of veracity and drug use. The defense also called B's father to impeach B's testimony.

marks omitted.) *State* v. *Merriam,* 264 Conn. 617, 659–61, 835 A.2d 895 (2003).

In the present case, the court permitted the introduction of evidence of the defendant's alleged sexual assault of B to prove (1) a common scheme or plan on the part of the defendant to sexually abuse his granddaughters, (2) intent and (3) absence of mistake. Although it is unclear from his brief, the defendant appears to argue that the court abused its discretion in admitting the evidence under one of those exceptions and further claims that the court improperly allowed the admission of this evidence under any exception because the prejudicial effect outweighed the probative value. Specifically, the defendant claims that B's testimony that he touched and digitally penetrated her private part was unduly prejudicial.

"As we have indicated, [t]he primary responsibility for conducting the balancing test to determine whether the evidence is more probative than prejudicial rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion." (Internal quotation marks omitted.) Id., 664. "Prejudicial evidence is evidence that tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence . . . but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury. . . . The problem is thus one of balancing the actual relevancy of the other crimes evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence. . . .

"In sexual assault cases, because of the nature of the evidence and its potential impact on the jury, the use

of prior sexual misconduct evidence is usually prejudicial to the defendant, as well as probative of whether the defendant committed the charged crime. The balancing of probity against prejudice, therefore, to determine which trumps the other, in crimes involving sexual assaults and prior sexual misconduct, is a difficult process. . . .

"[T]he probative value of the evidence is increased, and the prejudicial effect decreased, by a number of factors. First, as in most other sexual assault cases, because they usually occur in private, the balance of the case hinge[s] on the [victim's] testimony versus the defendant's testimony." (Citation omitted; internal quotation marks omitted.) *State* v. *Aaron L.*, 79 Conn. App. 397, 413–14, 830 A.2d 776 (2003), aff'd, 272 Conn. 798, 865 A.2d 1135 (2005). Furthermore, striking similarities between the charged and uncharged misconduct, such as the nature of the crimes and the identity of the victims, make the evidence of prior misconduct highly probative. Id., 414.

In this instance, the evidence was especially probative of intent and absence of mistake[9] because all of the victims were the defendant's granddaughters, allegedly molested while sitting on his lap watching television, and they were all prepubescent at the time of the alleged misconduct.[10] In light of the marked similarities between the uncharged and charged misconduct, the evidence had significant probative value. Moreover,

[9] As we hold that the evidence was probative of intent and absence of mistake, we need not decide whether the evidence was also admissible to prove common scheme or plan. Accordingly, we do not decide whether the incident was too remote to retain its probative value because remoteness is relevant in assessing prior misconduct evidence offered only under the common plan or scheme exception. See, e.g., *State* v. *James G.*, 268 Conn. 382, 390, 844 A.2d 810 (2004).

[10] C was twenty-two months old at the time of the sexual abuse and was between the ages of three and four at the time of trial. H was four at the time of the incident and six at the time of the trial.

because the jury already had heard, and was in the process of hearing, evidence of the charged sexual offenses, the uncharged sexual misconduct evidence was not as shocking and the prejudicial impact was lessened.

"[W]e are mindful that we are to give every reasonable presumption to the validity of the call by the trial court and that we accord more liberality in the admission of such evidence in cases involving sex related crimes than in cases involving other crimes." (Internal quotation marks omitted.) Id. Finally, as noted by the state, the court was aware of the prejudicial nature of the prior misconduct evidence and on three occasions gave the jury a limiting instruction.

We also note that the issue of intent was a significant factor at trial. Although the defendant would have had the jury believe that he was simply an affectionate grandfather who enjoyed cuddling with his grandchildren, the state's claim was that he sexually assaulted his grandchildren and placed them at risk of injury. The issue of intent, therefore, was central to the charges against the defendant, and, on the issue of intent, the evidence of prior sexual misconduct was especially relevant. Accordingly, we conclude that the court properly admitted the evidence of prior uncharged misconduct.

The judgment is affirmed.

In this opinion, FLYNN, J., concurred.

MCDONALD, J., concurring in part and dissenting in part.

I agree with part I of the majority opinion.

As to part II of the majority opinion, the defendant, John G., claims that the court improperly admitted the testimony of his granddaughter, B, that when she was

age eight, nearly ten years before trial, he digitally penetrated her vagina. I would hold that the evidence of B was admitted improperly as to count one of the information charging the defendant with sexual assault in the first degree.

Our Supreme Court has stated that "evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . Nor can such evidence be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . Evidence of prior misconduct may be admitted, however, when the evidence is offered for a purpose other than to prove the defendant's bad character or criminal tendencies." (Citations omitted; internal quotation marks omitted.) *State* v. *Merriam*, 264 Conn. 617, 659–60, 835 A.2d 895 (2003); *State* v. *Nunes*, 260 Conn. 649, 684, 800 A.2d 1160 (2002); Conn. Code Evid. § 4-5 (a). Such purposes include proving, among other things, intent. *State* v. *Merriam*, supra, 660. Our Supreme Court stated: "In order to determine whether such evidence is admissible, we use a two part test. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of [the prior misconduct] evidence must outweigh [its] prejudicial effect . . . ." (Internal quotation marks omitted.) Id., 661.

In this case, the state presented B as a witness to establish a common scheme or plan, intent and absence of mistake. The majority relies on intent and absence of mistake as the purpose for introduction of the evidence. As to the first count, sexual assault in the first degree, it was improper for the court to admit the testimony of B as being relevant to intent and absence of mistake because they were not at issue before the jury. The jury, as instructed, was not required to find intent, as there was no claim of involuntary digital penetration

of the vagina of C, another of the defendant's grand-daughters and the victim of the conduct alleged in count one. See *State* v. *Pierson*, 201 Conn. 211, 215–16, 514 A.2d 724 (1986), on appeal after remand, 208 Conn. 683, 546 A.2d 268 (1988), cert. denied, 489 U.S. 1016, 109 S. Ct. 1131, 103 L. Ed. 2d 193 (1989).[1] Our Supreme Court

[1] The court charged the jury as to count one as follows: "A person is guilty of sexual assault in the first degree when such person engages in sexual intercourse with another person, and such other person is under thirteen years of age and the actor is more than two years older than such person.

"The elements of the offense: the state must prove all of the following elements beyond a reasonable doubt in order to justify a verdict of guilty. One, that the defendant engaged in sexual intercourse with another person; two, that the other person was under thirteen years of age at the time of the sexual intercourse; three, and that the defendant was more than two years older than such person.

"I am now going to go through these elements one by one and in detail for you. The first element that the state must prove beyond a reasonable doubt is that the defendant engaged in sexual intercourse with C. Sexual intercourse is defined by statute and means, for the purpose of this case, vaginal intercourse. Sexual intercourse means penetration into the genital opening. Its meaning is limited to persons not married to each other.

"Penetration is an element of the offense of sexual assault in the first degree, which the state must prove beyond a reasonable doubt.

"Our law provides that penetration, however slight, is sufficient to complete sexual intercourse and does not require emission of semen. The phrase penetration, however slight, is intended to cover penetration of the labia majora. Penetration may be committed digitally, that is, by the finger or fingers into the genital opening of the victim's body.

"If you find beyond a reasonable doubt that there was sexual intercourse, the state must also prove beyond a reasonable doubt that at the time of the sexual intercourse, C had not yet reached the age of thirteen, and the defendant was more than two years older than such other person.

"If you find that the state has established these elements beyond a reasonable doubt, then that is sufficient for conviction of this offense. There is no need for the state to prove force or compulsion by the defendant, and it is not a defense even if the victim consented to sexual intercourse.

"Now, the state contends in count one, that, on or about September 12, 2002, in New Britain, Connecticut, the defendant engaged in sexual intercourse with C, who at the time was under thirteen years of age and the defendant was more than two years older than she, by penetrating her vagina with his finger or fingers. The defendant, on the other hand, denies all of the state's allegations.

"In order for you to reach a verdict of guilty of count one, you must find beyond a reasonable doubt that all the elements of the offense of sexual assault in the first degree were proven, namely, that the defendant engaged

has stated: "The distinction between using evidence to prove an act and using evidence to prove intent is consistent with our prior case law." *State* v. *Meehan*, 260 Conn. 372, 396, 796 A.2d 1191 (2002). Professor Wigmore describes the proper use of evidence of prior bad acts or offenses admitted to show intent as follows: "It will be seen that the peculiar feature of this process of proof is that the *act itself is assumed to be done,*—either because (as usually) it is conceded, or because the jury are instructed not to consider the evidence from this point of view until they find the act to have been done and are proceeding to determine the intent. . . . [T]he attempt is merely to discover the intent accompanying the act in question . . . ." (Emphasis in original.) 2 J. Wigmore, Evidence (Chadbourn Rev. Ed. 1979) § 302, p. 245.

Furthermore, at the trial, as to mistake, the defendant did not claim that he penetrated C's vagina by mistake or accident. To the contrary, he claimed he never digitally penetrated C's vagina. In the words of the New Jersey Supreme Court in *State* v. *G.V.*, 162 N.J. 252, 744 A.2d 137 (2000), "[i]ntellectual honesty compels the conclusion there is no genuine dispute that one who has sexual intercourse with" a twenty-two month old granddaughter "has made a mistake . . . ." (Internal quotation marks omitted.) Id., 261.

As to the first count, the only issue for the jury in this case was whether the act of digital penetration occurred. Because there was no issue as to intent and mistake, the evidence was not admitted properly on these issues. See id.; see also *United States* v. *Benedetto*, 571 F.2d 1246, 1249 (2d Cir. 1978); *People* v. *Woltz*, 228 Ill. App. 3d 670, 674, 592 N.E.2d 1182, leave to appeal denied, 146 Ill. 2d 650, 602 N.E.2d 474 (1992); *State* v. *Lipka*, 174 Vt. 377, 391–93, 817 A.2d 27 (2002).

---

in sexual intercourse with C, and that, at the time, C was under thirteen years of age and the defendant was more than two years older than she."

Finally, when B testified on voir dire before her jury testimony, she did not state that the defendant had digitally penetrated her vagina, only that he had touched her vagina. The court ruled that B could testify as she did on voir dire. When B testified before the jury, however, she added that the defendant had penetrated her vagina. Thus, the court did not rule that the testimony's probative value outweighed its prejudicial effect, as our cases require. See *State* v. *Romero*, 269 Conn. 481, 502, 849 A.2d 760 (2004); *State* v. *Merriam*, supra, 264 Conn. 671.

I would conclude, as to the first count, that the admission of B's testimony was not harmless. Our Supreme Court, in *State* v. *Sawyer*, 279 Conn. 331, 352–57, 904 A.2d 101 (2006) (en banc), clarified the harmless error standard. "[T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . [I]t expressly requires the reviewing court to consider the effect of the erroneous ruling on the jury's decision. . . . Accordingly . . . a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Citations omitted; internal quotation marks omitted.) Id., 357.

In this case, the state's evidence as to digital penetration was not overwhelming. It was based on testimony of C's father and a physician that C's reaction, indistinctly videotaped in a darkened room, indicated that the defendant inserted his finger into C's vagina under C's diaper. That physician never examined C, and the state presented no evidence of physical injury indicating vaginal penetration. The defendant denied any penetration in a recorded telephone conversation and in his trial testimony. Furthermore, the court's instructions directed to the counts of the information in which intent was at issue did not safeguard against the jury's using

B's evidence improperly as to count one, in which intent was not at issue.[2] In effect, the jury was not instructed how to use the evidence as to count one. See *State* v. *G.V.*, supra, 162 N.J. 262. The danger was that the evidence could have been used to prove that penetration did occur.

The majority does not reach the admissibility of the evidence under the common scheme or plan exception.

[2] The court charged the jury as follows concerning B's testimony: "Evidence of prior acts of misconduct of the defendant against B, and his statements on the audiotape regarding the granddaughters that are not mentioned in the information, are not being admitted to prove the bad character of the defendant or his tendency to commit criminal acts.

"Such evidence and the testimony of B is being admitted solely to show or establish the existence of a plan or scheme in the commission of the criminal acts alleged in the information, *or the existence of the intent, which is a necessary element of the crimes charged*, or to show the absence of mistake on the part of the defendant.

"You may not consider such evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate a criminal propensity.

"You may consider such evidence if you believe it, and further find that it logically, rationally and conclusively supports the issues for which it is being offered by the state. But only as it may bear here on the issues of the existence of a plan or scheme in the commission of the criminal acts alleged in the Information, *or the existence of the intent, which is a necessary element of the crimes charged*, or to show the absence of mistake on the part of the defendant.

"On the other hand, if you do not believe such evidence, or even if you do, if you find that it does not logically, rationally and conclusively support the issues for which it is being offered by the state, namely, the existence of a plan or scheme in the commission of the criminal acts alleged in the Information, *or the existence of the intent, which is a necessary element of the crimes charged*, or to show the absence of mistake on the part of the defendant, then you may not consider that testimony for any other— for any purpose.

"You may not consider evidence of prior misconduct of the defendant even for the limited purpose of attempting to prove the crimes charged in the information because it may predispose your mind uncritically to believe that the defendant may be guilty of the offenses here charged merely because of the alleged prior misconduct. For this reason, you may consider this evidence only on the issues of the existence of a plan or scheme in the commission of the criminal acts alleged in the information *or the existence of the intent, which is a necessary element of the crimes charged*, or to

In *State* v. *Shindell*, 195 Conn. 128, 133–34, 486 A.2d 637 (1985), our Supreme Court described such common plan or scheme evidence as that which proves the existence of a larger continuing plan, scheme or conspiracy, of which the present crime on trial is a part. The prior misconduct is not an unrelated incident but part of a continuing system of criminal activity. Id., 135. In *State* v. *Sawyer*, supra, 279 Conn. 349 n.15, our Supreme Court noted the difference between using prior misconduct evidence to establish identity and using it to "establish [a] broader scheme of criminal activity . . . ."

In the present case, the court did not instruct the jury that it could use B's evidence to find such a broader scheme in the commission of the prior misconduct and the criminal acts alleged in the information. The jury, rather, was told that the evidence could be used on the issues of the "existence of a plan or scheme in the commission of the criminal acts alleged in the information . . . ." See footnote 2 of this opinion.

Moreover, in its brief before us, the state does not argue that B's evidence was relevant other than to prove intent or absence of mistake. The state's failure to raise the claim that B's evidence was relevant other than to intent or absence of mistake constitutes a waiver of those claims on appeal. See *State* v. *Sawyer*, supra, 279 Conn. 342 n.11. Accordingly, I would not consider the common scheme or plan exception as supporting the admission of B's evidence as to count one.

As to the other counts charging sexual assault in the fourth degree and risk of injury to a child by sexual contact, the evidence would be relevant to the issues of intent, required by the sexual assault offenses, and mistake, as to both charges, which were in dispute. The defendant was charged with multiple counts of sexual

show the absence of mistake on the part of the defendant and for no other purpose." (Emphasis added.)

assault in the fourth degree under General Statutes § 53a-73a (a).[3] The defendant's intent and lack of mistake was relevant and material in relation to the fourth degree sexual assault counts because proof that the defendant committed the act of intentionally touching for the purpose of his sexual gratification are elements of the crime. As to contact with the intimate parts of the children under risk of injury,[4] the defendant claimed that his touching was accidental, and, therefore, his intent and lack of mistake were relevant to rebut that defense.

Although I do not agree with the statement in footnote 9 of the majority opinion that remoteness is not relevant as to intent, I would conclude that the evidence, even if improperly admitted, was not harmful as to the charges of sexual assault in the fourth degree and risk of injury to a minor by sexual contact in view of the defendant's highly damaging admissions in a telephone conversation recorded by the police, which the jury heard. In that conversation, the defendant stated that since 1989, he had touched "the peeper" of his young granddaughters without penetrating any of them and that he had been undergoing therapy.

---

[3] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . or (C) physically helpless . . . or (2) such person subjects another person to sexual contact without such other person's consent . . . ." Sexual contact is defined as "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor . . . ." General Statutes § 53a-65 (3).

[4] The defendant was also charged with multiple counts of risk of injury to a child under General Statutes § 53-21 (a), which provides in relevant part: "Any person who . . . (2) has contact with the intimate parts . . . of a child under the age of sixteen years . . . in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty . . . ." In this case, the jury was instructed, on the issue of contact in a sexual and indecent manner, that such contact must not be innocent, accidental or inadvertent.

Accordingly, I would reverse the defendant's conviction as to count one and order a new trial.[5] I concur with the majority as to the remaining counts.

---

[5] I, therefore, would not reach the issue of the limited testimony of the defendant's expert witness.