# STATE OF CONNECTICUT *v.* L.W.[1]
## (AC 29924)

Bishop, Harper and Pellegrino, Js.

Argued January 12—officially released July 6, 2010

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Catherine Brannelly Austin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, L.W., appeals from the judgment of conviction, rendered following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), sexual assault in the first degree in violation of § 53a-70 (a) (2), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A), sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A),[2] risk of injury to a child in violation of General Statutes § 53-21 (a) (2) and risk of injury to a child in violation of § 53-21 (a) (1).[3] The defendant claims that the court

[2] We note that the conduct that gave rise to the charge of sexual assault in the fourth degree allegedly occurred between 2000 and 2002. Although § 53a-73a (a) (1) (A) was amended during that time, there is no dispute that the conduct in which the defendant allegedly engaged was prohibited under all of the revisions of the statute applicable during that time period. In the interest of simplicity, we refer to the current revision of § 53a-73 (a) (1) (A).

[3] We note that the conduct that gave rise to the risk of injury charges allegedly occurred between 2000 and 2002. Although § 53-21 was amended during that time, there is no dispute that the conduct in which the defendant allegedly engaged was prohibited under all of the revisions of the statute applicable during that time period. In the interest of simplicity, we refer to the current revision of § 53-21.

improperly admitted evidence of his uncharged sexual misconduct with his stepdaughter, W. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. In September, 2000, when the victim was eight years of age, the department of children and families placed her in the care and custody of the defendant and his wife, who were the victim's foster parents. The victim lived with the defendant, his wife and W for approximately three years. Another foster child lived at the residence beginning in 2001. While the victim resided with the defendant, the defendant sexually assaulted the victim on numerous occasions. These assaults ranged from the defendant's touching of the victim's private parts to penile-vaginal intercourse. The defendant often used physical force to compel the victim to submit to his sexual assaults. The assaults occurred in the victim's bedroom as well as in the basement of the defendant's residence.

Prior to the start of the trial, the state provided written notice to the defendant that it intended to offer testimony from W related to acts of misconduct by the defendant. Specifically, the state provided notice that the uncharged misconduct was that the defendant had "engaged in similar behavior as the defendant is currently charged, that is, sexually assaulting persons under the age of thirteen and/or touching the intimate parts of their bodies." On October 30, 2007, during a hearing related to several pretrial motions, the court and the parties addressed the admissibility of this evidence. During the hearing, the court heard representations from the state concerning the factual allegations

The court imposed a total effective sentence of twenty years imprisonment, suspended after twelve years, followed by ten years of probation with special conditions, including a fine of $151.

involving the defendant and the victim. The state represented that the evidence at issue, concerning the defendant's conduct toward W, consisted of W's statements that in three instances that occurred in late 2002 and early 2003, the defendant inappropriately had touched her vaginal area. Also, W stated that in another instance that occurred during this same span of time, the defendant had attempted to engage in penile-vaginal intercourse with her, although penile penetration had not occurred. The state represented that W was twelve or thirteen years of age at the time of these events and that they had occurred in the defendant's residence. Additionally, the state represented that in connection with these prior acts involving W, the defendant had entered a guilty plea to the crime of risk of injury to a child but that the state was not seeking to introduce evidence of his guilty plea, only that he had engaged in the criminal acts at issue with W.

The state argued that the uncharged misconduct evidence[4] was admissible to corroborate prosecution testimony and to prove motive and a common plan or scheme. See Conn. Code Evid. § 4-5 (b). The defendant's attorney argued that evidence of the defendant's conduct toward W was dissimilar to the conduct alleged in this case and argued against its admission. The court focused on the state's assertion that the evidence was

[4] Although it appears that the defendant had been convicted of the crime of risk of injury to a child in connection with his conduct toward W, we describe the evidence of the defendant's misconduct conduct toward W as "uncharged misconduct evidence" because, *in the present case*, the defendant was not charged with an offense related to his conduct toward W. Thus, our use of this terminology merely is intended to differentiate between those acts for which the defendant stood charged in the present case and those for which he did not stand charged and is consistent with that used in prior appellate decisions. See, e.g., *State* v. *Randolph*, 284 Conn. 328, 338–39, 348–49, 933 A.2d 1158 (2007) (describing evidence of misconduct for which defendant stood charged in separate criminal case as well as evidence of conduct for which defendant had been convicted following guilty plea in separate criminal case as "uncharged" misconduct evidence).

relevant to demonstrating a common plan or scheme. First, the court stated that it had to consider the remoteness of the offenses involving W in relation to the offenses at issue in the present case, whether the offenses against W were similar in nature to the offenses at issue in the present case, and whether the offenses involving W were committed against a person similar to the victim. Second, the court stated that if it found the offenses to be similar in these respects, it next had to consider whether the probative value of evidence related to the offenses involving W outweighed the prejudicial effect of such evidence.

The court found that the uncharged misconduct against W was materially similar to the offenses against the victim. The court found that the offenses against W, occurring between the end of 2002 and the beginning of 2003, were not remote in time from the offenses at issue in the present case, which allegedly occurred from 2000 to 2002. Also, the court found that the offenses involving W were similar in nature to those at issue in the present case. In this regard, the court observed that the proffered evidence concerning W was that the defendant had touched her vaginal area and had attempted to engage in penile-vaginal intercourse with her. The court observed that the evidence concerning the victim was that the defendant had touched the victim's private parts, including her vaginal area, and that the defendant had engaged in penile-vaginal intercourse with the victim. The court found that W and the victim were similar, both being young girls who resided in the defendant's residence and had a close relationship with the defendant. The court found that the evidence was relevant and admissible to prove a common plan or scheme by the defendant. Finally, the court determined that the prejudicial effect of the evidence did not outweigh its probative value. At trial, W testified to facts consistent with the state's offer of proof.[5]

---

[5] The court stated that its ruling was based solely on the state's offer of proof and that the defendant had the right to renew his objection to the

First, we set forth our standard of review. "To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review." *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007). "We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." Id. When reviewing a court's exercise of discretion, "[w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . The trial court has wide discretion to determine the relevancy [and admissibility] of evidence . . . . In order to establish reversible error on an evidentiary impropriety . . . the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Citations omitted; internal quotation marks omitted.) *State* v. *Cecil J.*, 291 Conn. 813, 818–19, 970 A.2d 710 (2009).

"Evidence of other crimes, wrongs or bad acts of a person is inadmissible to prove the bad character or criminal tendencies of that person." Conn. Code Evid. § 4-5 (a). "Evidence of other crimes, wrongs or acts of a person is admissible for purposes . . . such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." Conn. Code Evid. § 4-5 (b). In *State* v. *DeJesus*, 288 Conn. 418,

---

admission of W's testimony if W's trial testimony differed materially from the state's offer of proof. Subsequently, the court permitted the defendant's attorney to examine W outside the jury's presence. Following this examination, the court determined that W's testimony was consistent with the state's offer of proof and reaffirmed its ruling permitting the state to present W's testimony before the jury.

470, 953 A.2d 45 (2008) (en banc), an opinion officially released after the court rendered judgment in the present case, our Supreme Court effectively carved out an additional exception to § 4-5 (b) of the Connecticut Code of Evidence when it recognized "a *limited* exception to the prohibition on the admission of uncharged misconduct evidence in *sex crime* cases to prove that the defendant had a propensity to engage in aberrant and compulsive criminal sexual behavior." (Emphasis in original.)

Although the court in the present case explicitly admitted the challenged evidence under the common plan or scheme exception, we must review its ruling in light of our Supreme Court's analysis in *DeJesus*. This is because, in *DeJesus*, the court recognized that evidence routinely admitted under the common plan or scheme exception typically is unrelated to "the existence of an overall scheme or plan in the defendant's mind that encompasses the commission of the charged and uncharged crimes . . . [and that] evidence admitted under this standard ordinarily does not fall within the 'true' common scheme or plan exception." Id., 468. Citing a variety of public policy reasons, the court concluded that evidence of uncharged misconduct in sex crime cases may be admitted to demonstrate a defendant's *propensity* to engage in sexual misconduct. Id., 468–71.[6]

---

[6] The defendant asserts that, to the extent that the state argues on appeal that the uncharged misconduct evidence was properly admissible as evidence of his propensity to engage in sexual misconduct, the state "waived" such a claim because it did not rely on this ground at trial. As we stated previously, the state argued at trial that the evidence was relevant under the common plan or scheme exception. Neither the parties nor the court had the benefit of *DeJesus* when the case was tried. Insofar as *DeJesus* recognized that evidence admitted under the common plan or scheme exception may be used to demonstrate propensity, rather than the existence of a common plan or scheme, we do not conclude that the state waived its right to argue, following *DeJesus*, that the jury properly could have considered the evidence for such purpose. In *DeJesus*, the defendant argued that the court's admission of evidence under the common plan or scheme exception was

The court in *DeJesus* determined that evidence of this nature is admissible if three conditions are satisfied. First, the evidence must be "relevant to prove that the defendant had a propensity or a tendency to engage in the type of aberrant and compulsive criminal sexual behavior with which he or she is charged. Relevancy is established by satisfying the liberal standard pursuant to which evidence previously was admitted under the common scheme or plan exception. Accordingly, evidence of uncharged misconduct is relevant to prove that the defendant had a propensity or a tendency to engage in the crime charged only if it is: (1) . . . not too remote in time; (2) . . . similar to the offense charged; and (3) . . . committed upon persons similar to the prosecuting witness." (Internal quotation marks omitted.) Id., 473. Second, the evidence must be more probative than prejudicial. Id. "In balancing the probative value of such evidence against its prejudicial effect . . . trial courts must be mindful of the purpose for which the evidence is to be admitted, namely, to permit the jury to consider a defendant's prior bad acts in the area of sexual abuse or child molestation for the purpose of showing propensity." (Internal quotation marks omitted.) Id., 473–74. Third, "to minimize the risk of undue prejudice to the defendant, the admission of evidence of uncharged sexual misconduct under the limited propensity exception . . . must be accompanied by an appropriate cautionary instruction to the jury." Id., 474.

The defendant argues that the court "misconstrued the law" because "[t]here was no evidence of a genuine overarching plan or scheme in the defendant's mind,

---

harmful solely because of the risk that the jury might have inferred from the evidence that he had a propensity to engage in sexual crimes. *State* v. *DeJesus*, supra, 288 Conn. 476. The court in *DeJesus*, rejecting the claim, stated that "this is the precise purpose for which the jury properly could have considered the evidence." Id.

encompassing the acts with both [the victim] and [W]." Furthermore, the defendant challenges the relevancy of the evidence, arguing that uncharged misconduct evidence did not satisfy the three part relevancy inquiry. Also, the defendant argues that the evidence was more prejudicial than probative and that the prejudicial effect of the evidence was exacerbated by the lack of an adequate cautionary instruction concerning the jury's consideration of this evidence. We will address each aspect of the claim, in turn.

Guided by our Supreme Court's analysis in *DeJesus*, we readily conclude that the court's admission of the evidence under the common plan or scheme exception was improper. Despite the similarities between the charged and uncharged misconduct at issue, which will be discussed in greater detail, there is nothing in the evidence to suggest that there existed an overall plan or scheme in the defendant's mind that encompassed the commission of the charged and uncharged offenses. As the court in *DeJesus* observed, the risk inherent in the improper admission of evidence under the common plan or scheme exception is that the fact finder may infer from the evidence that a defendant has a propensity to engage in sexual misconduct. See *State* v. *DeJesus*, supra, 288 Conn. 476. We do not conclude that the court's ruling was harmful to the defendant, however, because, under *DeJesus*, the evidence properly was admissible for this exact purpose, to demonstrate the defendant's propensity to engage in sexual misconduct. Id. (holding that improper admission of uncharged misconduct evidence under common plan or scheme exception harmless where jury properly could consider such evidence to infer defendant's propensity to engage in sexual misconduct). Although the court did not have the benefit of *DeJesus* when it ruled on the admission of the uncharged misconduct evidence,

the court's analysis of the evidence nonetheless satisfied the standard of admissibility for propensity evidence; on the basis of the court's analysis of the relevance and probative value of the evidence, we conclude that the evidence was admissible.

In determining the admissibility of the evidence, the court compared the proffered evidence of the defendant's conduct toward W with the facts of the present case, reaching the factual conclusion that the conduct was materially similar. In disputing this aspect of the court's ruling, the defendant relies on the fact that the alleged conduct involving W consisted of only a handful of encounters, involved touching but not penile-vaginal intercourse, occurred only once in W's bedroom and was not characterized by the defendant's use of force. In contrast, the defendant asserts, the conduct involving the victim encompassed many acts of sexual abuse, involved touching and penile-vaginal intercourse, occurred in the victim's bedroom on many occasions and was characterized by the defendant's use of force to compel the victim to submit to the defendant's unwanted sexual activities. Our review of the relevant case law reflects that there is no bright line test for determining whether alleged acts of uncharged sexual misconduct and those involving the complaining witness in a sexual assault case are sufficiently similar. What is clear, however, is that the law requires *similar* acts of misconduct, not *identical* acts of misconduct. Here, the court noted the fact that the misconduct involved the defendant's touching of the private parts of W and the victim. The court also noted that, in the case of W, the proffered evidence was that the defendant had attempted to engage in penile-vaginal intercourse, and that, in the case of the victim, the proffered evidence was that the defendant had engaged in penile-vaginal intercourse numerous times. In both instances, the alleged sexual misconduct occurred surreptitiously

and in the defendant's residence. On this record, we do not conclude that the court's finding, that the acts involved were sufficiently similar, was clearly erroneous. Furthermore, we recognize that, in assessing the relevancy of the evidence, the court determined that the acts of uncharged misconduct and the charged offenses occurred in temporal proximity and that the defendant committed these acts on victims of the same gender and age who shared a close relationship with the defendant and, in fact, resided in his home. The defendant does not appear to challenge in any meaningful way these aspects of the court's analysis, and we conclude that they are sound. Accordingly, we conclude that the court properly determined that the evidence of misconduct involving W was sufficiently relevant to warrant its admission.

Next, we consider whether the court properly determined that the probative value of the evidence outweighed "the prejudicial effect that invariably flows from its admission." *State* v. *Merriam*, 264 Conn. 617, 671, 835 A.2d 895 (2003). In evaluating this factor, we recognize the strong similarities between W and the victim with regard to their age and the nature of their relationship to the defendant. The state proffered evidence that the defendant had touched W's vaginal area and had attempted to engage in penile-vaginal intercourse with her. The allegations involving the victim included the defendant's many acts of penile-vaginal intercourse, as well as his touching of the victim's private parts. These acts occurred in close proximity, against female victims of a similar age and took place in the defendant's home. Given the strong relevance of this evidence, we conclude that the evidence was highly probative. See, e.g., *State* v. *John G.*, 100 Conn. App. 354, 364, 918 A.2d 986 ("striking similarities between the charged and uncharged misconduct, such as the nature of the crimes and the identity of the victims,

make the evidence of prior misconduct highly proba-
tive"), cert. denied, 283 Conn. 902, 926 A.2d 670 (2007).

In assessing the prejudicial effect of the evidence,
we observe that W's testimony related to a few instances
of sexual misconduct by the defendant, none of which
involved penile-vaginal penetration, but improper
touching and an attempt to engage in penile-vaginal
intercourse. In contrast, the victim testified that, in addi-
tion to the defendant's touching her private parts, the
defendant repeatedly had forced her to engage in penile-
vaginal intercourse on many occasions. The victim
described far more numerous and graphic acts of sexual
abuse than did W. For these reasons, we are not per-
suaded that W's testimony was likely to raise the jury's
emotions unduly. See *State* v. *R.K.C.*, 113 Conn. App.
597, 602, 967 A.2d 115 (comparing nature of uncharged
misconduct evidence with nature of charged offenses),
cert. denied, 292 Conn. 902, 971 A.2d 689 (2009).

Finally, in evaluating the likely prejudicial effect of
the evidence, we look to the court's cautionary instruc-
tions concerning the evidence.[7] After the defendant's

---

[7] Apart from challenging the court's admission of the uncharged miscon-
duct evidence, the defendant claims that the court's limiting instructions
concerning the evidence were inadequate. In this regard, the defendant
argues that the court's instructions did not convey that the uncharged mis-
conduct evidence was an insufficient factual basis on which to find him
guilty of the charged offenses, the state still had the burden of proving each
and every element of the charged offenses and that he was charged only
with the offenses in the information. The record reflects that the defendant
did not submit a written request to charge concerning the court's limiting
instructions and did not object to the limiting instructions at trial. See
Practice Book § 42-16. Additionally, the defendant has not requested any
level of extraordinary review of this unpreserved instructional claim. Our
Supreme Court has held that the admission of uncharged sexual misconduct
evidence "must be accompanied by an appropriate cautionary instruction
to the jury"; *State* v. *DeJesus*, supra, 288 Conn. 474; and the court's instruc-
tions in this regard are relevant to an assessment of the prejudicial effect
of the evidence. Thus, we will review the court's cautionary instructions
insofar as we deem such review integral to our analysis of the defendant's
properly preserved claim related to the admission of the uncharged miscon-
duct evidence.

trial attorney examined W outside the jury's presence, he requested a cautionary instruction concerning W's testimony. After W's direct examination by the state, the court delivered the following instruction to the jury: "[L]et me just give you an instruction on the law that applies to this testimony. I'll give you the same or similar instruction at the end of this case, but I want you to hear this instruction now. Evidence has just been presented of prior acts of misconduct by the defendant here . . . . This evidence has not been admitted to prove the bad character of the defendant or the defendant's tendency to commit criminal acts, and it cannot be used for such purposes. It's being admitted for a limited purpose only. And that purpose is to show, the state claims that it shows or establishes that the commission of the misconduct follows a common plan or scheme by the defendant. You may believe or disbelieve this evidence. It is for you to determine, one, whether such acts occurred and, two, if they did occur, whether they establish a common scheme or plan of criminal conduct."

During its jury charge, the court provided the following additional instruction concerning the evidence at issue: "Evidence has been presented in this case of prior acts of misconduct by the defendant, specifically, the state offered evidence that the defendant sexually molested [W] in late 2002 and early 2003. This evidence has not been admitted to prove the bad character of the defendant or the defendant's tendency to commit criminal acts, and it cannot be used [by] you for such purposes. Such evidence has been admitted solely to show or establish that . . . the commission of the misconduct follows a common plan or scheme. You may believe or disbelieve this evidence. It is for you to determine, one, whether such acts occurred and, two, if they occurred, whether . . . they establish a common plan or scheme of criminal conduct."

We conclude that the court's cautionary instructions were appropriate and decreased the likelihood of undue prejudice, including the likelihood that the jury would have considered the evidence for an improper purpose. In *DeJesus*, our Supreme Court did not mandate the trial court's use of specific language in a cautionary instruction related to the use of uncharged sexual misconduct evidence. Nonetheless, our Supreme Court set forth, with implicit approval, instructional language that had been approved by the Tenth Circuit Court of Appeals. *State* v. *DeJesus*, supra, 288 Conn. 474 n.36, citing *United States* v. *McHorse*, 179 F.3d 889, 903 (10th Cir.), cert. denied, 528 U.S. 944, 120 S. Ct. 358, 145 L. Ed. 2d 280 (1999). We agree with the defendant that the cautionary instructions delivered by the trial court did not mirror in every respect the instructional language set forth in *DeJesus*; the court did not have the guidance of *DeJesus* when it presided over the defendant's trial. Nonetheless, we conclude that the court's instructions unmistakably conveyed that the jury could either believe or disbelieve the uncharged misconduct evidence and, more importantly, that the jury could consider the evidence only for the limited purpose of determining whether the defendant's conduct toward the victim was part of a common plan or scheme. To the extent that the jury inferred from the evidence that the defendant had a propensity to engage in sexual misconduct, such an inference was not improper. Furthermore, our review of the court's entire charge reflects that the court adequately conveyed to the jury that the state bore the burden of proving each and every element of the charged offenses beyond a reasonable doubt and that the defendant stood charged only with the offenses set forth in the state's information. In light of this record, we conclude that the cautionary instructions were adequate. See, e.g., *State* v. *R.K.C.*, supra, 113 Conn. App. 602 (cautionary instruction that uncharged

misconduct testimony to be considered solely for purpose of motive and intent deemed adequate). For all of the foregoing reasons, we conclude that the admission of the evidence under the common plan or scheme exception, although improper, was harmless under the facts of this case.

The judgment is affirmed.

In this opinion the other judges concurred.