STATE OF CONNECTICUT *v.* BARRY A.*
(AC 33304)

DiPentima, C. J., and Gruendel and Alvord, Js.

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued April 9—officially released September 10, 2013

*Hubert J. Santos*, with whom, on the brief, were *Hope C. Seeley* and *Jessica M. Santos*, for the appellant (defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, and *Mark A. Stabile*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Barry A., appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), two counts of sexual assault in the second degree in violation of § 53a-71 (a) (4), one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73 (a) (1) (B), one count of sexual assault in the fourth degree in violation of § 53a-73 (a) (1) (E), and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that (1) the court improperly prohibited defense counsel from refreshing the recollection of a witness, thus infringing on the defendant's right to confrontation under the federal constitution, (2) the court improperly allowed the state to present evidence of uncharged misconduct, and (3) the prosecutor engaged in prosecutorial impropriety, depriving him of a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and his wife lived together with their four children in Plainfield until the defendant's arrest in 2007. They had three biological children, a daughter, C, and two sons, B and R. The defendant and his wife later adopted the victim in February, 1999.

When the victim was approximately eleven years old, the defendant began sexually assaulting her. The first instance occurred when the defendant, a truck driver by profession, took her on an overnight truck run. The defendant removed the victim's clothes, and touched her chest and her "private." On multiple other occasions, the defendant sexually assaulted the victim by forcing her to engage in oral and vaginal intercourse in his truck, as well as at their home. After the assaults, the defendant would tell the victim that he was sorry and that he loved her. When the victim was thirteen years old, she told C about the sexual assaults, and C told their youth pastor. Shortly thereafter, the youth pastor reported the incident to the Department of Children and Families (department).

The defendant thereafter was arrested and charged with the aforementioned crimes. The case proceeded to a jury trial, after which the jury found the defendant guilty on all counts. The court rendered judgment accordingly and sentenced him to a total effective sentence of forty years incarceration, execution suspended after twenty years, and twenty years probation with special conditions, which included registration as a sex offender. This appeal followed.

I

The defendant first claims that the court improperly prohibited defense counsel from refreshing the recollection of the victim, thereby infringing on his constitutional right to confrontation. The defendant argues that the victim's inability to remember the inconsistent statements she made to her aunt and to the department reflected on her credibility, a purpose for which the defendant was entitled to use the department's report to refresh her recollection. We disagree.

The following additional facts are relevant to this claim. At trial, defense counsel cross-examined the victim regarding statements she made to the department

about the victim's relationship with her mother that contradicted statements she previously had made to her aunt. For example, defense counsel asked the victim whether she lied to her aunt about her mother prohibiting her from taking Tylenol when she had braces, to which the victim responded that she had lied. At other times during cross-examination, however, the victim could not remember making certain statements to her aunt or to the department. Defense counsel then sought to show the department's report to the victim to refresh her recollection as to whether the statements made to her aunt were false or, alternatively, whether the statements made to the department were false. The court denied defense counsel's request to refresh the victim's recollection, finding the proposed line of inquiry both irrelevant and collateral. The court found that whether the victim spoke to a department worker about her mother's actions and her response to that department worker "goes to a [completely] different issue." It further found that "if there [were] any remote probative value to this line of questioning, it [was] so far outweighed by any prejudice that it would likely confuse the finder of fact [as to] what the admission [was] here in judging the credibility of [the victim] . . . ." The court, however, permitted defense counsel to continue questioning the victim on the topic and elicited responses from the victim demonstrating that she had lied on previous occasions.[1] After trial, the defendant filed a motion for a judgment of acquittal and a motion for new trial on the grounds that, inter alia, the court failed to allow the defendant to refresh the recollection of the victim. The court denied the motions.

---

[1] One instance where defense counsel demonstrated an inconsistency in the victim's statement was when the victim testified that she told her aunt that she was hit by her mother, but admitted telling the department she was not hit by her mother.

"Whether the recollection of a witness needs to be refreshed and whether it can be or has been refreshed by any means is in each case a question for the trial court, and its conclusion is unreviewable unless there has been a clear abuse of discretion." (Internal quotation marks omitted.) *State* v. *Bruno*, 236 Conn. 514, 534, 673 A.2d 1117 (1996). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did." (Internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 11, 1 A.3d 76 (2010). On appellate review, we "will make every reasonable presumption in favor of upholding the trial court's ruling[s] [on these bases]." (Internal quotation marks omitted.) Id.

"If, after reviewing the trial court's evidentiary rulings, we conclude that the trial court [ruled] properly . . . then the defendant's constitutional claims necessarily fail. . . . If, however, we conclude that the trial court [ruled] improperly . . . we will proceed to analyze [w]hether [the] limitations on impeachment, including cross-examination, [were] so severe as to violate [the defendant's rights under] the confrontation clause of the sixth amendment . . . a question of law [that is] reviewed de novo." (Citations omitted; internal quotation marks omitted). Id.

"The determination of whether a matter is relevant to a material issue or is collateral generally rests within the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Jose G.*, 102 Conn. App. 748, 782, 929 A.2d 324 (2007), aff'd, 290 Conn. 331, 963 A.2d 42 (2009). "Evidence is considered relevant when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case. . . . Furthermore, relevant evidence has a logical tendency to aid the trier in the determination of an issue. . . . A witness may not be impeached by contradicting his

or her testimony as to collateral matters, that is, matters that are not directly relevant and material to the merits of the case." (Internal quotation marks omitted.) *State v. Hall*, 66 Conn. App. 740, 755, 786 A.2d 466 (2001), cert. denied, 259 Conn. 906, 789 A.2d 996 (2002).

A witness [however] may be asked, in good faith, about specific instances of conduct of the witness, if probative of the witness' character for untruthfulness. Pursuant to this rule of evidence, [a] witness may be impeached by specific acts of conduct that evidence a lack of veracity. . . . While a witness may be impeached by such acts, [b]oth the allowance and the extent of cross-examination into the [prior acts] of a witness is discretionary with the trial court . . . and such evidence may be excluded . . . if it has a tendency to confuse or impede the litigation by *injecting collateral issues into the trial.*" (Citations omitted; emphasis in original; internal quotation marks omitted.) *State v. Annulli*, 130 Conn. App. 571, 580–81, 23 A.3d 808 (2011), cert. granted on other grounds, 302 Conn. 936, 28 A.3d 990 (2011). "A matter is not collateral if it is relevant to a material issue in the case apart from its tendency to contradict the witness. . . . The determination of whether a matter is relevant to a material issue or is collateral generally rests within the sound discretion of the trial court." (Internal quotation marks omitted.) *State v. Davis*, supra, 298 Conn. 32.

The defendant argues that the court improperly prohibited defense counsel from refreshing the victim's recollection because the line of inquiry was relevant to the victim's credibility. Yet, defense counsel's extensive questioning on cross-examination allowed the defendant to confront the victim regarding any potential lies she previously had told to her aunt and/or to the department. The court reasonably could have determined that allowing defense counsel to use the report to refresh the victim's recollection would have confused the issue

by injecting a collateral issue into the trial. This could have required the jury to determine whether the victim, in an unrelated incident, had lied to her aunt or to the department on more than one occasion, turning the trial into a referendum on whether a thirteen year old previously had lied.[2]

We, therefore, cannot conclude that the trial court abused its discretion when it precluded defense counsel from refreshing the victim's recollection. Because the court did not improperly preclude the defendant from

[2] The defendant cites *State* v. *Colton*, 227 Conn. 231, 248, 630 A.2d 577 (1993), for the proposition that "[e]vidence tending to show the motive, bias or interest of an important witness is never collateral or irrelevant." Although this statement on its face appears persuasive, the facts of *Colton* are starkly different from the present case. In *Colton*, the defendant was on trial for murder. Id., 233. The only witness to the alleged crime was a witness who was a drug addict. Id., 234. Only after learning of a $20,000 reward for information leading to the arrest and conviction of the person responsible for the victim's murder did the witness tell the police that she had been at the scene of the crime. Id. On cross-examination, defense counsel questioned the witness on her motive for testifying against the defendant. Id., 240. The witness testified that her drug addiction required as much money as she could obtain, but that she did not come forward to get the reward to support her drug habit because she " 'had a different lifestyle' " where she did not need the money. Id. The trial court did not allow defense counsel to admit evidence that would have contradicted the witness' testimony regarding her new lifestyle and her motivation for coming forward. Id., 250. Our Supreme Court held that the court improperly excluded the evidence because "the jury had to inquire into the circumstances that led to her becoming a state's witness . . . and . . . what role . . . the reward money played in prompting her statements to the police . . . ." Id.

In the present case, the defendant was not offering evidence to show the motive or bias of the victim. Rather, the defendant was trying to refresh the recollection of the victim in order to determine whether she lied to her aunt and/or lied to the department. More specifically, defense counsel stated: "I don't want the court to get confused. I'm not trying to impeach her. If this doesn't refresh her recollection, it doesn't. . . . If it doesn't, I certainly don't plan on impeaching her on what she has to say." The defendant's attempt to refresh the victim's recollection, therefore, is separate and apart from impeaching her based on a motive, bias, or interest. The defendant was not presenting evidence to show the victim's motive or bias, and therefore the court did not improperly find defense counsel's request to refresh the victim's memory a collateral matter.

using the report to refresh the victim's memory, the defendant's constitutional claim necessarily fails.

## II

The defendant also contends that the court improperly allowed the state to present evidence of uncharged misconduct. This claim is unavailing.

Prior to trial, the state filed a notice of intent to introduce uncharged sexual misconduct of the defendant. In support of its notice, the state set forth allegations that the defendant first assaulted C when she was between the ages of ten and eleven years old, while on one of the defendant's truck routes. The notice described that the defendant again engaged in sexual contact with C when she was between the ages of thirteen and fourteen years old. The notice also recounted details of the sexual assaults, including the defendant "reaching his hand under her shirt and squeezing and rubbing her breast, pulling her shirt up and sucking on her breast, and by putting his hand down her pants and underwear and rubbing her vagina." The court found this uncharged misconduct relevant.

After finding the uncharged misconduct evidence relevant, the court instructed the jury on its permissible use first when the victim testified, again when C testified, and once again during its charge to the jury. When the victim testified, the court gave a limiting instruction to the jury, stating that "[s]uch evidence . . . may bear upon the defendant's knowledge, the state of mind, but also may bear upon a system of criminal activity engaged in by the defendant . . . ." During its jury charge, the court provided the following instruction: "In a criminal case in which the defendant is charged with a crime exhibiting aberrant and compulsive sexual behavior, evidence of the defendant's commission of another offense or offenses is admissible and may be considered for its bearing on any matter to which it is

relevant . . . [but] on its own is not sufficient to prove the defendant guilty of the crimes charged in the information. . . . [T]he defendant is not on trial for any act or conduct or offense not charged in the information. . . . Such evidence is being admitted solely to show or establish the defendant's intent or motive for the commission of the crime charged."

The standard of review governing this claim is well established. "The admission of evidence of . . . uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling . . . [and its] decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . [T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant . . . [who] must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Antonaras*, 137 Conn. App. 703, 713–14, 49 A.3d 783, cert. denied, 307 Conn. 936, 56 A.3d 716 (2012).

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior." (Internal quotation marks omitted.) *State* v. *DeJesus*, 288 Conn. 418, 440, 953 A.2d 45, (2008). "Evidence of uncharged misconduct is admitted [however] to establish the existence of a common scheme or plan in *sex crime* cases. It is well established that, in such cases, [t]here is a greater liberality . . . in admitting evidence of other criminal acts to show a common scheme, pattern or design . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 466.

"The court in *DeJesus* determined that evidence of this nature is admissible if three conditions are satisfied. First, the evidence must be relevant to prove that the defendant had a propensity or a tendency to engage in the type of aberrant and compulsive criminal sexual behavior with which he or she is charged. Relevancy is established by satisfying the liberal standard pursuant to which evidence previously was admitted under the common scheme or plan exception. Accordingly, evidence of uncharged misconduct is relevant to prove that the defendant had a propensity or a tendency to engage in the crime charged only if it is: (1) . . . not too remote in time; (2) . . . similar to the offense charged; and (3) . . . committed upon persons similar to the prosecuting witness. . . . Second, the evidence must be more probative than prejudicial. . . . In balancing the probative value of such evidence against its prejudicial effect . . . trial courts must be mindful of the purpose for which the evidence is to be admitted, namely, to permit the jury to consider a defendant's prior bad acts in the area of sexual abuse or child molestation for the purpose of showing propensity. . . . Third, to minimize the risk of undue prejudice to the defendant, the admission of evidence of uncharged sexual misconduct under the limited propensity exception . . . must be accompanied by an appropriate cautionary instruction to the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *L.W.*, 122 Conn. App. 324, 331, 999 A.2d 5, cert. denied, 298 Conn. 919, 4 A.3d 1230 (2010).

## A

The defendant first claims that the uncharged misconduct was not relevant to the charged offenses because the acts, the location of the acts, and the relationship of C to the defendant were not sufficiently similar to those of the victim and the defendant. We disagree.

"Our review of the relevant case law reflects that there is no bright line test for determining whether alleged acts of uncharged sexual misconduct and those involving the complaining witness in a sexual assault case are sufficiently similar. What is clear, however, is that the law requires *similar* acts of misconduct, not *identical* acts of misconduct." (Emphasis in original.) Id., 333.

In evaluating the relevancy of evidence, we recognize the strong similarities between the victim and C. The court found that "the [victim] and the subject of the uncharged misconduct are both daughters of the defendant. One daughter was [ten] to [thirteen] years old at the time in question, the other approximately [eleven] to [thirteen]. . . . The evidence seeks to offer that the defendant touched both individuals' chests with his hands. The defendant touched both of their chests with his mouth, then touched and rubbed both their vaginas. Also, [it seeks to offer] that the activity frequently took place in the defendant's truck." The defendant argues that because his conduct escalated with the victim to oral and vaginal sexual intercourse, the defendant's uncharged misconduct with regard to C cannot properly be admitted. We are unpersuaded by this argument.

An escalation of sexual assault does not deprive the state of the ability to present the uncharged misconduct. The defendant's assault against C was substantially similar to, and mirrored, the defendant's initial stages of assault against the victim. The defendant's acts with regard to C were not too remote in time, were similar to the offenses charged, and were committed upon her by her father, similar to that of the victim. See *State* v. *L.W.*, supra, 122 Conn. App. 331. Given the substantial similarity between the victim and C, we cannot conclude that the court improperly found the uncharged misconduct evidence relevant.

## B

The defendant further claims that the uncharged misconduct evidence should have been excluded because it was more prejudicial than probative. "Although evidence of child sex abuse is undoubtedly harmful to the defendant, that is not the test of whether evidence is unduly prejudicial. Rather, evidence is excluded as unduly prejudicial when it tends to have some adverse effect upon a defendant *beyond tending to prove the fact or issue that justified its admission into evidence.* . . . As explained in *DeJesus*, because of the unusually aberrant and pathological nature of the crime of child molestation, prior acts of similar misconduct, as opposed to other types of misconduct, are deemed to be highly probative because they tend to establish a necessary motive or explanation for an otherwise inexplicably horrible crime . . . and assist the jury in assessing the probability that a defendant has been falsely accused of such shocking behavior." (Emphasis in original; internal quotation marks omitted.) *State* v. *Allen*, 140 Conn. App. 423, 440, 59 A.3d 351, cert. denied, 308 Conn. 934, 66 A.3d 497 (2013).

The justifications for presenting uncharged misconduct evidence are to show common scheme, pattern, or design. *State* v. *DeJesus*, supra, 288 Conn. 466. Evidence that must be excluded as more prejudicial than probative is only that which has an adverse effect beyond these allowable justifications. The uncharged misconduct evidence in this case was probative with respect to the defendant's motive for committing the acts of sexual assault and/or as an explanation of why the defendant committed the acts. The evidence that was before the court supported its conclusion to admit the evidence because the defendant's prior sexual assault on his other daughter, C, tends to establish an explanation for this "inexplicably horrible crime"; *State* v. *Allen*, supra, 140 Conn. App. 440; and would help the jury

determine whether the allegations of sexual assault were true. Admitting such evidence is not unduly prejudicial, therefore, because the jury is not required to accept the uncharged misconduct evidence as true. In fact, the court's instructions, as will be discussed further, limited the jury's use of the uncharged misconduct evidence. Accordingly, the evidence did not have an adverse effect on the defendant beyond tending to prove the justified admissions, namely, the defendant's motive or intent in committing the charged crime. For these reasons, we cannot conclude that the court abused its discretion when finding that the uncharged misconduct evidence was more probative than prejudicial.

## C

Finally, the defendant argues that because the uncharged misconduct evidence prejudiced him so severely, no cautionary instruction would cure the error. We disagree.

Under *DeJesus*, we look to the whether the court's cautionary instruction was appropriate and decreased the likelihood of undue prejudice by prohibiting the use of the uncharged misconduct evidence for an unjustified purpose. A trial court "minimize[s] the risk of undue prejudice to the defendant by issuing a cautionary instruction explaining that the jury could use the uncharged misconduct evidence only for common scheme or plan and intent purposes, and not as proof that [the defendant] committed the acts charged in this case for which he is being prosecuted." (Internal quotation marks omitted.) *State* v. *Antonaras*, supra, 137 Conn. App. 726. Furthermore, "[i]n *DeJesus*, our Supreme Court did not mandate [that] the trial [court] use . . . specific language in a cautionary instruction related to the use of uncharged sexual misconduct evidence." (Internal quotation marks omitted.) *State* v. *L.W.*, supra, 122 Conn. App. 337.

A cautionary instruction is required so that the jury does not use the evidence for an impermissible purpose. Uncharged misconduct for sex crime cases, however, is subject to a more liberal standard. "[T]he purpose for which the [uncharged misconduct] evidence is to be admitted [is] to permit the jury to consider a defendant's prior bad acts in the area of sexual abuse or child molestation for the purpose of showing propensity." (Internal quotation marks omitted.) Id., 331. A court's instruction, "pursuant to the common scheme or plan exception, rather than [pursuant to] the propensity exception, [however, is] harmless." (Internal quotation marks omitted.) *State* v. *Antonaras*, supra, 137 Conn. App. 726.

The court in the present case did not instruct the jury that the evidence could be used to prove the defendant's propensity or a tendency to engage in the crime charged, as would be allowed under *DeJesus*; rather, it gave an instruction that more strictly limited its use by the jury.[3] The court's instruction was, in fact, more favorable to the defendant in that the court limited the jury's consideration of the uncharged misconduct evidence to the elements of intent or motive for the commission of the crime charged. The court further instructed the jury that the defendant was not on trial for any act or conduct not charged in the information. The court's cautionary instruction, therefore, met the requirement for minimizing the risk of undue prejudice to the defendant.

---

[3] The defendant claims that the court "failed to isolate the appropriate exception under which the jury could consider the testimony. This left the jurors with little guidance and substantial confusion, leaving to determine for themselves how to interpret the evidence." The instruction given by the court did not confuse the members of the jury, but rather limited the scope for which they could consider the evidence. The jurors have no other access to the legal standard for the uncharged misconduct evidence, and therefore would be unaware of the liberal scope to which it may be used. Consequently, the court giving a more limited instruction than required under *DeJesus* could not have caused confusion for the jurors.

In light of our determinations, we conclude that the court properly found the uncharged misconduct evidence relevant to the crime charged and more probative than prejudicial. The court's cautionary instruction also properly minimized the risk of undue prejudice to the defendant, and therefore, we cannot conclude that the court abused its discretion in admitting the uncharged misconduct evidence.

## III

Finally, the defendant claims that the prosecutor committed various acts of prosecutorial impropriety that deprived him of his constitutional right to a fair trial. The defendant raises twenty instances of prosecutorial impropriety in the categories of (1) personal opinion, (2) appeal to emotions, (3) denigration of defense counsel, and (4) extraneous matters and facts not in evidence.[4]

"[T]he defendant's failure to object at trial to each of the occurrences that he now raises as instances of prosecutorial impropriety, though relevant to our inquiry, is not fatal to review of his claims. . . . This does not mean, however, that the absence of an objection at trial does not play a significant role in the determination of whether the challenged statements were, in fact, improper. . . . To the contrary, we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was [improper] in light of the record of the case at the time." (Internal quotation marks omitted.) State v. Taft, 306 Conn. 749, 762, 51 A.3d 988 (2012).

---

[4] We carefully have reviewed each of the defendant's twenty claims of prosecutorial impropriety. We have discovered that in the context of the entire closing and rebuttal arguments, several claims are completely without merit. We, therefore, limit our discussion to the claims that warrant discussion.

"[T]he touchstone of due process analysis in cases of alleged prosecutorial [impropriety] is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 571, 849 A.2d 626 (2004). "[T]he burden is on the defendant to show, not only that the remarks were improper, but also that, considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process." *State* v. *Payne*, 303 Conn. 538, 563, 34 A.3d 370 (2012).

"[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 572.

"In determining whether prosecutorial [impropriety] was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors." (Internal quotation marks omitted.) *State* v. *Fauci*, 282 Conn. 23, 33–34, 917 A.2d 978 (2007). "Specifically, we must determine whether (1) the impropriety was invited by the defense, (2) the impropriety was severe, (3) the impropriety was frequent, (4) the impropriety was central to a critical issue in the case, (5) the impropriety was cured or ameliorated by a specific jury charge, and (6) the state's case against the defendant was weak due to a lack of physical evidence." Id., 51. With that standard in mind, we turn to the specific claims raised by the defendant.

## A

The defendant first claims that the prosecutor expressed his personal opinion as to the evidence presented at trial and to the general credibility of the victim and the defendant. We do not agree.

"[Although a] prosecutor is permitted to comment [on] the evidence presented at trial and to argue the inferences that the jurors might draw therefrom, he is not permitted to vouch personally for the truth or veracity of the state's witnesses." (Internal quotation marks omitted.) Id., 43. "Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position." (Internal quotation marks omitted.) Id., 35.

"This court has held that it is not improper for a prosecutor to offer an opinion when commenting on evidence that supports the credibility of a witness. . . . A prosecutor may contend that testimony is truthful because it is corroborated by the other evidence in the case. . . . Furthermore, a prosecutor may properly comment on the credibility of a witness where the comment reflects reasonable inferences from the evidence adduced at trial." (Citations omitted; internal quotation marks omitted.) State v. Pereira, 72 Conn. App. 107, 126, 806 A.2d 51 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003). "It is not improper for the prosecutor to comment [on] the evidence presented at trial and to argue the inferences that the [jury] might draw therefrom . . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade [it] to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand." (Internal quotation marks omitted.) State v. Long, 293 Conn. 31, 38, 975 A.2d 660 (2009).

The defendant first claims that the prosecutor improperly stated during his rebuttal argument the following: "You heard [the victim] testify. . . . You weigh her credibility . . . as with all the witnesses. I would submit to you that based on [the defendant's] demeanor on the stand, the fact that he falsified some of his records and he has every reason in the world not to tell the truth, the defendant has no credibility whatsoever in looking at his testimony in conjunction with all the other testimony in the case."

Before the prosecutor invited the jurors to make any inferences, he informed them that it was their duty to weigh the credibility of the witnesses and the defendant. Only after this remark did he encourage them to look at the testimony of all the witnesses together when determining the credibility of the defendant. The prosecutor's statements, therefore, simply invited the jurors to draw reasonable inferences from the evidence presented to them at trial. He did not personally vouch for any witness' credibility, nor did he insert his personal opinion into the statements, and, therefore, they were not improper.

Another set of statements the defendant cites as improper relate to the honesty of the victim and C. In his closing argument, defense counsel stated that the victim had a motive to lie because the sexual assault "didn't happen. She made up the story because she was trying to get out of that situation that she was living in, and it worked. Her life is better now." The prosecutor stated in his rebuttal argument that "[i]f [the victim and C] were looking to attack the defendant, they could have done a much better job. If this was made up, they are not going to come in and tell you, 'Yeah, there were two times I was in his truck. I don't know where we were, though.' . . . I think it's reasonable that they wouldn't know where it was. . . . And if they were lying, why don't they exaggerate?"

The prosecutor's statements in this instance were commenting on evidence that would support an opposing inference to the defendant's claim, namely that the victim and C had testified truthfully. It is not improper for the prosecutor to argue that the victim and C had no apparent motive to lie. See *State* v. *Thompson*, 266 Conn. 440, 466, 832 A.2d 626 (2003) ("it is not improper for the state to argue that a witness had no apparent motive to lie"). Furthermore, the prosecutor "may contend that testimony is truthful because it is corroborated by the other evidence in the case." (Internal quotation marks omitted.) *State* v. *Pereira*, supra, 72 Conn. App. 126. In making these remarks, the prosecutor did not offer his own opinion as to the credibility of the victim or C's testimony, but instead offered the jury an alternative to defense counsel's theory. The prosecutor's statements highlighted a conclusion that reasonably could be supported by the evidence presented at trial, and for these reasons, the statements were not improper.

The prosecutor's statements, in both his closing and rebuttal arguments, cited relevant evidence presented at trial. We, accordingly, cannot conclude that any of the defendant's cited remarks of prosecutorial impropriety were an improper expression of the prosecutor's opinion on the evidence or on the credibility of the defendant or the witnesses.

B

The defendant next contends that the prosecutor repeatedly made improper remarks that appealed to the emotions, passion, and prejudices of the jurors. We disagree.

It is well established that "[a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . [S]uch appeals should be avoided because they have the effect of diverting the [jurors'] attention

from their duty to decide the case on the evidence. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Internal quotation marks omitted.) *State* v. *Long*, supra, 293 Conn. 54. "[I]n deciding cases [however] . . . [j]urors are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion. . . . Therefore, it is entirely proper for counsel to appeal to [the jurors'] common sense in closing remarks." (Internal quotation marks omitted.) Id., 42.

The defendant first claims that the prosecutor improperly argued to the jury that "[C] told you that when she was about [ten] years old, while she was in her father's truck with him on one of his milk runs, they went to sleep . . . [and] while she is asleep with her head on her daddy's lap, she wakes up and finds him to be having his hand in her shirt . . . ." The defendant cites *State* v. *Warholic*, 278 Conn. 354, 376, 897 A.2d 569 (2006), for the proposition that a "prosecutor's characterization of the victim as a 'cute little kid' improperly encouraged the jury to identify and sympathize with the victim." In *Warholic*, the court held that the prosecutor did insert his own personal opinion when he encouraged the jury to sympathize with the victim because his statement about the "complainant's appearance . . . was irrelevant because it had no bearing on witness credibility or any factual issue in the case." Id., 377. In the present case, the prosecutor was retelling relevant evidence presented at trial, not offering a characterization of any witness. The use of the phrase "on her daddy's lap" was a mere reference to

that evidence, and not an appeal to the juror's emotions. Accordingly, this statement was not improper.

Another alleged prosecutorial impropriety cited by the defendant occurred when the prosecutor stated: "Was it a dysfunctional home? I don't know. But the king of dysfunction is molesting your children. Are the kids mad at him? Of course they are. He molested the children. Was he not allowed to go see his family? Of course. He molested the children." Similar to other challenged statements, the prosecutor here was commenting on evidence offered at trial, encouraging the jury to focus on the relevant evidence in the case. The jury was free to make its own conclusions based on common sense about the reason for the children's anger toward the defendant, and therefore, these statements did not improperly appeal to the emotions of the jurors.

Lastly, the defendant argues that the prosecutor appealed to the emotions of the jurors when he stated: "Some discrepancies between the testimony? Of course. Kids come into a courtroom. They testify. They are testifying about things that happened three and one-half years ago. They're kids. They're being questioned by an experienced trial attorney. Of course there are going to be some inconsistencies." The prosecutor's remarks in this category do not appeal to the emotions, passions, and prejudices of the jurors, but instead appeal to their common sense. The prosecutor was drawing on previous expert and witness testimony presented at trial, which proffered that a child does not always remember the specific details of the acts of sexual assault against her. The prosecutor's argument was not improper, therefore, because he cited relevant evidence that could lead the jury to rationally appraise the evidence and to decide independently whether the victim was lying.

## C

The defendant also claims that the prosecutor inappropriately denigrated defense counsel.[5] This claim lacks merit.

"[T]he prosecutor is expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel. . . . [I]t is improper for a prosecutor to tell a jury, explicitly or implicitly, that defense counsel is employing standard tactics used in all trials . . . . There is a distinction [however] between argument that disparages the integrity or role of defense counsel and argument that disparages a theory of defense. . . . Moreover, not every use of rhetorical language is improper. . . . There is ample room, in the heat of argument, for the prosecutor to challenge vigorously the arguments made by defense counsel." (Internal quotation marks omitted.) *State* v. *Albino*, 130 Conn. App. 745, 772, 24 A.3d 602, cert. granted on other grounds, 302 Conn. 940, 941, 29 A.3d 466 (2011).

The defendant cites as improper the prosecutor's statements that, "quite a few interesting things that [defense counsel] told you, particularly on proof beyond a reasonable doubt, asking if you would buy a house or base your retirement fund on what [the victim] said. I don't know what he's talking about, that me or any of you are ever going to be buying a house based on what a tenth grader tells you." This statement was in response to defense counsel's argument comparing the burden of reasonable doubt to "issues about doubts in serious affairs in [the jurors' lives]" in which he asked the jury, "[w]ould you buy a house based on [the vic-

---

[5] The defendant also claims that the prosecutor improperly stated: "Counsel suggests this is part of some grand plan as part of the divorce. If it was to set up that set of circumstances that I just laid out for you, it took a bunch of geniuses, I'll tell you that." We cannot discern how this statement could constitute prosecutorial impropriety. The statement, which simply mentions defense counsel's comment, is not denigration.

tim's] word? Would you invest your retirement fund on what [the victim] had to say and the type of investigation that was done here? Think about those things when you think about reasonable doubt and just how little she could remember." The prosecutor was undoubtedly permitted to respond to defense counsel's characterization of the burden of reasonable doubt as to the "issues about doubts in serious affairs of [the jurors' lives]." See *State* v. *Albino*, supra, 130 Conn. App. 772 ("[t]here is ample room, in the heat of argument, for the prosecutor to challenge vigorously the arguments made by defense counsel"). The prosecutor discredited the theory offered by defense counsel, but did not attack defense counsel specifically. The statement, therefore, was not improper.

## D

Lastly, the defendant claims that the prosecutor improperly injected into the proceedings extraneous matters and facts not in evidence. We disagree.

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record." (Internal quotation marks omitted.) *State* v. *Medrano*, 131 Conn. App. 528, 541, 27 A.3d 52 (2011), aff'd, 308 Conn. 604, 65 A.3d 503 (2013). "[T]he privilege of counsel in addressing the jury . . . must never be used as a license to state, or to comment upon, or even to suggest an inference from, facts not in evidence, or to present matters which the jury [has] no right to consider." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 587.

"In determining whether such [impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line . . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by

the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case." (Internal quotation marks omitted.) *State* v. *Gould*, 290 Conn. 70, 78–79, 961 A.2d 975 (2009). "The [prosecutor] should not be put in the rhetorical straitjacket of always using the passive voice, or continually emphasizing that he is simply saying I submit to you that this is what the evidence shows, or the like." (Internal quotation marks omitted.) *State* v. *Long*, supra, 293 Conn. 38–39.

The defendant claims that the prosecutor injected extraneous matters into the trial when he stated that the jury was "allowed to consider [that the defendant is] accused of not just [sexual assault] to one child but to two."[6] The prosecutor's reference to the correctly admitted testimony of C regarding the uncharged sexual assaults, however, was entirely proper. The uncharged misconduct referenced by the prosecutor, namely the sexual assault of C, was not an extraneous matter, but one relevant to the issue of whether the defendant had a common pattern or design in committing sex crimes. See *State* v. *DeJesus*, supra, 288 Conn. 466. We conclude, therefore, that the prosecutor did not inject into the proceedings extraneous matters. This court having determined that the defendant has not established any instances of impropriety by the prosecutor, the defendant's claim that he was deprived of a fair trial necessarily fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] The defendant argues that the prosecutor's statement was improper because it "likely confused the jurors as to how they were supposed to evaluate the uncharged misconduct evidence." This argument, however, concerns the question of whether the defendant was deprived of a fair trial, a question we reach only if we determine that the prosecutor has committed an impropriety. Because we have not determined that the prosecutor's statement was improper, we do not analyze its effect on the defendant's trial.