******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROBERTO ACOSTA
(AC 38003)

Lavine, Alvord and Sullivan, Js.

*Argued December 3, 2015—officially released February 2, 2016*

(Appeal from Superior Court, judicial district of
Danbury, Pavia, J.)

*Daniel J. Foster*, assigned counsel, for the appel-
lant (defendant).

*Brett R. Aiello*, special deputy assistant state's attor-
ney, with whom were *Stephen J. Sedensky III*, state's
attorney, and, on the brief, *Deborah P. Mabbett*, senior
assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Roberto Acosta, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), and one count of risk of injury to a child in violation of § 53-21 (a) (2). The charges arose from an incident involving the defendant's niece, A,[1] that occurred in 2009. On appeal, the defendant claims that the court improperly allowed the state to present evidence of uncharged misconduct. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. One afternoon in the spring of 2009, A, who was twelve years old and in sixth grade, had returned from school and was watching television at her home in Danbury. She lived with her parents and older brother, but she was alone at the time. Her parents were at work and were not expected until 6 or 7 p.m.

When A's dog started barking, she looked outside and saw her uncle, the defendant, approaching the front door. He had not previously visited their home, and he did not live in the area. She opened the door and greeted him with a hug and a kiss because "he was family." After chatting for a bit, A took the defendant for a tour of the house. He asked where her parents were, and she told him that they would not be home until 6 p.m. The tour concluded in her bedroom, where she proceeded to show the defendant her snow globe collection. They continued to talk about the family, generally "catching up," when he told her that she looked beautiful. He then sat down on her bed and told her to do the same. The defendant began to rub her leg, shoulder and arms, again repeating that she looked beautiful.

A was beginning to feel uncomfortable with the situation on her bed when the defendant instructed her to remove her shirt. She complied, and he unhooked her bra and started rubbing her breasts. At that point, he took her hand and placed it on his genital area on the outside of his pants. He told her to get undressed while he removed his own clothing. A "just followed what he said" because she did not know if he would hurt her. The defendant spread her legs and engaged in penile-vaginal intercourse with her. Approximately fifteen minutes later, after again asking what time her parents would be home, the defendant got dressed, told her "to tell [her] parents that he said 'hi,'" and then left the house. A was "confused" and "embarrass[ed]," and decided that she would not tell anyone about what had happened between her and the defendant.

In January, 2012, while A was on a trip to New York City with two of her close friends, the girls decided to play a game of "confessions." A knew she could trust

her girlfriends and told them that her uncle, the defendant, had sexually assaulted her. They all were upset, and A made her friends promise not to disclose the incident to anyone. Approximately one week later, however, one of the girls reported the incident to her guidance counselor at school, and A was asked to speak with her guidance counselor and a social worker. After she confirmed that she had been sexually assaulted by the defendant, an investigation commenced, and the defendant was arrested and charged with the three crimes for which he was convicted. Following a trial, the jury returned a verdict of guilty on all three counts of the substitute long form information. The court accepted the verdict and rendered judgment accordingly. The defendant was sentenced to thirty years incarceration, execution suspended after seventeen years, followed by twenty-five years of probation with various conditions. This appeal followed.

The following additional facts and procedural history are necessary for the resolution of the defendant's claims on appeal. Prior to trial, the state filed a notice of its intent to offer evidence of the defendant's prior misconduct involving three additional female family members. The alleged incidents took place in 1990, 1997, and 2006, when the prepubescent girl family members were between nine and ten years of age. On the first day of trial, outside the presence of the jury, the parties discussed the state's request. Defense counsel voiced his opposition to the proffered testimony with respect to the 1990 and the 1997 incidents.[2]

With respect to the 1990 incident, the state indicated that the young girl at issue was the defendant's niece and that the defendant began having sexual conversations with her when she was nine or ten years old. Those inappropriate sexual conversations continued for a few years. Defense counsel argued that the conduct was too remote in time and that there had been no sexual contact, as had been alleged in the other incidents. The court, after stating the legal standard for the admission of prior uncharged sexual misconduct set forth in *State* v. *DeJesus*, 288 Conn. 418, 476, 953 A.2d 45 (2008), ruled that "the time frame is too remote" and "the conduct itself is not sufficiently similar" to the charged conduct in the present case. For that reason, the court concluded: "[T]he court feels that it has not met the relevancy standard. And, in turn, that to admit it would simply be too prejudicial . . . ."

With respect to the 1997 incident, the proffered evidence was that the defendant grabbed the hand of J, his nine year old niece, and placed it on his genital area. Defense counsel argued: "1997 is distant, so we do object, although you have an allegation of actual contact. And I will admit that's . . . as far as I'm concerned, a much closer call. I'm not going to concede that it should come in because I think on top of the

other one, it is prejudicial." The court ruled that the proffered evidence was relevant and that its probative value outweighed the prejudicial effect from its admission.[3]

At trial, following the testimony of A with respect to the incident in this case, and C with respect to the 2006 incident, J was called as a state's witness to testify about the defendant's prior misconduct in 1997. J testified that her uncle, the defendant, sexually molested her when she was nine years old. She testified that she and her two brothers were at her grandmother's house, where they often visited and where the defendant would pay them to do chores. The defendant sent the brothers away "to do something," and J remained in the kitchen alone with the defendant. After her brothers left, the defendant placed a long white tube sock around her eyes and then grabbed her hand and placed it on his genital area. Once J realized what it was, she yanked her hand back and pulled the sock from her eyes. She told the defendant that she was going to tell her parents what had happened, and she ran from the kitchen.[4]

On appeal, it is the defendant's claim that the testimony of J, with respect to the incident in 1997, was improperly allowed by the court because the prior uncharged misconduct was "too remote in time and not sufficiently similar to the charged misconduct." Specifically, the defendant argues that our Supreme Court has never affirmed the admission of prior misconduct evidence that occurred more than ten years prior to the charged misconduct. He further argues that although this court affirmed the admission of prior misconduct evidence that occurred twelve years prior to the charged misconduct in one case; *State* v. *Antonaras*, 137 Conn. App. 703, 49 A.3d 783, cert. denied, 307 Conn. 936, 56 A.3d 716 (2012); that case was unique because the charged and uncharged misconduct were "exquisitely similar."[5] The defendant claims that "[t]he charged and uncharged misconduct at issue here are not similar either in severity or in kind."

We begin with the applicable standard of review and legal principles that govern our analysis of the defendant's claims. "We review the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *State* v. *Orr*, 291 Conn. 642, 666–67, 969 A.2d 750 (2009).

"[A]s a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . Nor can such evidence be used to suggest that the defendant has a bad

character or a propensity for criminal behavior. . . . [H]owever, evidence of prior misconduct may be admitted when it is offered for a purpose other than to establish the defendant's bad character or criminal propensity. Among other things, prior misconduct evidence may be admissible to prove intent, identity, motive, malice or a common plan or scheme." (Citations omitted; internal quotation marks omitted.) *State* v. *Jacobson*, 283 Conn. 618, 630, 930 A.2d 628 (2007).

"[P]ublic policy considerations militate in favor of recognizing a *limited* exception to the prohibition on the admission of uncharged misconduct evidence in *sex crime* cases to prove that the defendant had a propensity to engage in aberrant and compulsive criminal sexual behavior." (Emphasis in original.) *State* v. *DeJesus*, supra, 288 Conn. 470. That approach, however, "does not vest trial courts with carte blanche to allow the state to introduce any prior sexual misconduct evidence against an accused in sex crime cases. . . . First, evidence of uncharged sexual misconduct is admissible only if it is relevant to prove that the defendant had a propensity or a tendency to engage in the type of aberrant and compulsive criminal sexual behavior with which he or she is charged. . . . [E]vidence of uncharged misconduct is relevant to prove that the defendant had a propensity or a tendency to engage in the crime charged only if it is: (1) . . . not too remote in time; (2) . . . similar to the offense charged; and (3) . . . committed upon persons similar to the prosecuting witness." (Citation omitted; internal quotation marks omitted.) Id., 472–73.

"Second, evidence of uncharged misconduct is admissible only if its probative value outweighs the prejudicial effect that invariably flows from its admission.[6] . . . In balancing the probative value of such evidence against its prejudicial effect, however, trial courts must be mindful of the purpose for which the evidence is to be admitted, namely, to permit the jury to consider a defendant's prior bad acts in the area of sexual abuse or child molestation for the purpose of showing propensity. . . .

"Lastly, to minimize the risk of undue prejudice to the defendant, the admission of evidence of uncharged sexual misconduct under the limited propensity exception adopted herein must be accompanied by an appropriate cautionary instruction to the jury."[7] (Citations omitted; footnote added; internal quotation marks omitted.) Id., 473–74.

With these principles in mind, we address the defendant's claim that the 1997 incident was too remote in time because there was a hiatus of twelve years between the charged and uncharged misconduct. He urges this court to adopt a "bright line rule" that would exclude evidence of uncharged sexual misconduct that has occurred more than ten years from the charged miscon-

duct. We decline to do so on the basis of controlling Supreme Court precedent.

In determining the relevancy of proffered uncharged sexual misconduct evidence under the three prongs set forth in *State* v. *DeJesus*, supra, 288 Conn. 476, the court's inquiry "should focus upon each of the three factors, as a single factor will rarely be dispositive." *State* v. *Romero*, 269 Conn. 481, 498, 849 A.2d 760 (2004). "The remoteness in time of a prior incident is rarely, standing alone, determinative of the admissibility of such evidence; rather, it is one factor to be considered by the trial court in making its decision." *State* v. *Kulmac*, 230 Conn. 43, 62, 644 A.2d 887 (1994). Applying these principles, our Supreme Court and this court have concluded that proffered uncharged sexual misconduct evidence was not too remote in time and was admissible as relevant in the following cases: *State* v. *Jacobson*, supra, 283 Conn. 632–33 (ten year gap not "insignificant" but not too remote); *State* v. *Romero*, supra, 498–500 (nine year gap not too remote); *State* v. *Kulmac*, supra, 62 (trial court did not abuse discretion in concluding incident seven years prior to charged misconduct was "sufficiently recent to have probative value"); *State* v. *Antonaras*, supra, 137 Conn. App. 716–17 (time gap of between nine and twelve years between uncharged and charged misconduct not too remote).

We cannot conclude that the trial court in the present case abused its discretion in admitting evidence of prior uncharged sexual misconduct that occurred twelve years prior to the charged misconduct, particularly in light of the two other prongs set forth in *State* v. *DeJesus*, supra, 288 Conn. 476. The record reflects that the evidence with respect to the challenged uncharged misconduct and the charged misconduct demonstrated that A and J were the prepubescent nieces of the defendant. The testimony of C, the victim of the 2006 incident, was admitted without objection and established that she, too, was a prepubescent family member.[8] Thus, there was a significant similarity between the victims, being family members[9] and prepubescent girls at the time of the sexual molestations.

Besides the similarity between the victims, the acts of uncharged and charged misconduct were sufficiently similar to be relevant. In making the determination of whether the acts of charged and uncharged misconduct are sufficiently similar, a trial court is guided by the following principle: "[T]here is no bright line test for determining whether alleged acts of uncharged sexual misconduct and those involving the complaining witness in a sexual assault case are sufficiently similar. What is clear, however, is that the law requires *similar* acts of misconduct, not *identical* acts of misconduct." (Emphasis in original; internal quotation marks omitted.) *State* v. *Barry A.*, 145 Conn. App. 582, 593, 76 A.3d 211, cert. denied, 310 Conn. 936, 79 A.3d 889 (2013).

In the present case, when alone with A and J, the defendant took the hand of each girl and placed it on the outside of his pants over his genital area. The "initial stages of assault"; id.; therefore, were similar. The defendant argues, however, that the conduct toward J was dissimilar because it was much less severe and did not escalate to sexual intercourse. That argument is unavailing. J testified that she pulled away from the defendant, told him that she intended to tell her parents what he had done, and then ran from the room. The jury reasonably could have inferred that his misconduct with J did not escalate *because she rebuffed him*. See *State* v. *Jacobson*, supra, 283 Conn. 635; *State* v. *McKenzie-Adams*, 281 Conn. 486, 531, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007), overruled in part on other grounds by *State* v. *Payne*, 303 Conn. 538, 548, 34 A.3d 370 (2012); *State* v. *Antonaras*, supra, 137 Conn. App. 721.

Accordingly, we cannot conclude that the court abused its broad discretion in admitting the evidence of misconduct involving J in 1997. The evidence was relevant because it was not too remote in time from the charged misconduct, and the evidence of uncharged misconduct was sufficiently similar to the charged abuse.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] Defense counsel did not object to the state's proffer of evidence with respect to the 2006 incident. The state's notice provided: "On or about July, 2006 . . . when [the witness C] was approximately ten years of age, the defendant pulled his penis out of his pants and told her [to] hold his penis because it was like candy and to suck his penis." C's testimony at trial corroborated the facts as alleged in the state's proffer.

[3] The court's ruling was as follows: "[W]ith regard to proffers two [the 1997 incident] and three [the 2006 incident], the court does find that they are not too remote in time, that the offenses are similar in nature in that the complainant in this particular instance took the stand and testified to the fact that the events in question with regard to this case are that the defendant did take the complainant's hand and place it on his privates. That is the allegation contained within both proffers two and three. And, therefore (1) it's not too remote in time, and (2) that the offenses are similar, and also that it was committed upon persons similar to the prosecuting witness, that in this particular case the age of the victims in both of the two proffers substantiate that it's committed upon persons similar to the prosecuting witness.

"So the court finds that the relevancy standard has been met.

"The second prong is that the evidence of uncharged misconduct is admissible only if it is—if its probative value outweighs the prejudicial effect that will flow from its admission.

"And in this particular instance because the allegations are limited in terms of the proffer, the state has indicated that they intend to be only within the short and confined parameters that the proffer offer with regard to its motion.

"In addition, the proffered evidence is not more explicit than that which is being introduced with regard to the complainant in this case so that, if anything, it's of less detail than the details that were offered by the complainant in this case so that the jury would not be unduly swayed or impassioned by allegations that were much more substantial or graphic from the allegations in this particular case.

"And so, based on those standards, the court will allow witnesses to

testify with regard to proffer number two and proffer number three in accordance with the proffers that were submitted by the state.

"I will also indicate that my understanding of the law is that the [Supreme Court in *DeJesus*] is really, basically, mandating some type of instruction that takes place at the time that these witnesses or testimony or evidence is introduced. And so, to that end, I have written up an instruction, and I'm going to ask that both sides review it so that you can indicate to the court— you have the night to look at it . . . ."

[4] J did not disclose the incident to her parents at that time.

[5] We note that although the trial court in *Antonaras* characterized the charged and uncharged misconduct as " 'exquisitely similar' "; *State* v. *Antonaras*, supra, 137 Conn. App. 713; this court did *not* adopt that particular characterization when it determined that the twelve year gap was not too remote under the circumstances of that case. Id., 716–17.

[6] On appeal, the defendant does not challenge the court's determination that the probative value of the proffered evidence outweighed the prejudicial effect from its admission.

[7] The court gave limiting instructions with respect to the uncharged sexual misconduct testimony, and the defendant has not challenged the adequacy or timing of those limiting instructions.

[8] On direct examination, C testified that the defendant was her uncle. On cross-examination, she described him as her half-brother.

[9] Family connections and familial types of relationships often have been cited by our courts as being indicative of the similarity of victims when comparing uncharged and charged sexual misconduct. See, e.g., *State* v. *Barry A.*, 145 Conn. App. 582, 593, 76 A.3d 211, cert. denied, 310 Conn. 936, 79 A.3d 889 (2013); *State* v. *Hickey*, 135 Conn. App. 532, 547, 43 A.3d 701, cert. denied, 306 Conn. 901, 52 A.3d 728 (2012); *State* v. *John G.*, 100 Conn. App. 354, 364, 918 A.2d 986, cert. denied, 283 Conn. 902, 926 A.2d 670 (2007).